# SMITH v. SALT LAKE & UTAH RAILROAD CORPORATION

No. 6185.   Decided September 13, 1940.   (105 P. 2d 338.)
Rehearing Denied, January 11, 1941.

*A. H. Hougaard,* of Salt Lake City, for appellant.

*Bagley, Judd, Ray & Nebeker* and *S. J. Quinney,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal from a judgment based on a directed verdict on the ground that plaintiff's intestate was not engaged in interstate commerce at the time of the accident which caused his death, and hence, that no right lay in plaintiff under the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq.

Deceased was killed near Lehi, Utah, while defendant's train was being operated so as to pick up a car. The train was en route from Salt Lake City to Provo, Utah. Included in the train were three cars belonging to railroad companies with no trackage in Utah (Pierre-Marquette, New York Central, and Erie). The three cars had been delivered to defendant at Provo on November 9, 1938, loaded with intertate freight, and had been moved by defendant to Salt Lake City on November 10. One was placed on defendant's track and unloaded—defendant was notified on November 14 that it was empty. Two were delivered to D. & R. G. R. R. to be unloaded—on November 14, defendant was notified that said cars were on the interchange track and had been made empty. Defendant's Chief Dispatcher left word to move the three cars to Provo Junction. While en route to Provo, deceased was killed.

Defendant was following its usual custom and practice in returning the cars to the carrier from whom received. It was stipulated that defendant was a subscriber to the Code of Car Service and Per Diem Rules of the Association of American Railroads. Under said rules foreign cars

must be sent to the connecting carrier for delivery to the home railroad upon being made empty unless certain options are exercised by the railroad in possession of the car. When the cars reached Provo there was an order by the Chief Dispatcher of D. & R. G. W. to divert said cars to the Northwest for lumber loading. This constituted a break in the normal flow of these cars homeward, but until they reached Provo they were in the flow of interstate commerce —homeward bound. They were not at rest and were not dispatched on a purely intrastate journey.

If even one car in a train is engaged in an interstate movement the whole train is engaged in interstate movement and persons injured thereby come under the Federal Employers' Liability Act. *Mappin* v. *Atchison, T. & S. F. R. Co.,* 198 Cal. 733, 247 P. 911, 49 A. L. R. 1330.

In *Trowbridge* v. *Kansas City & W. B. Ry. Co.,* 192 Mo. App. 52, 179 S. W. 777, the Missouri court said that a car delivered by a connecting carrier to a local carrier to be by it taken to a point and unloaded, was in interstate commerce while going to its destination, while unloading, and while returning empty to the connecting carrier. The business of that local carrier, however, was practically limited to taking cars billed to its western terminus or to consignees along its nine miles of road and returning them empty at its western terminus. The nine mile road was considered but a link in a total interstate movement.

In *Breske* v. *Minneapolis & St. L. R. Co.,* 115 Minn. 386, at page 389, 132 N. W. 337, at page 338, it was said:

"When a car used to carry an interstate shipment reaches its destination and is unloaded, it ordinarily thereupon ceases to be 'used' in moving interstate commerce. Where, however, after an interstate carriage, the car is to return empty to the state from which it came, it is considered as within the act throughout its trip, including the time between its unloading and the beginning of the return trip. But if, after discharging its interstate cargo, the car is used in intrastate traffic, or if it remains idle in the yards or shops, awaiting repairs, or awaiting a future use for state or interstate business as may after-

wards be determined, it is not, while so idle, 'used in moving inter-state commerce.' "

In the *Mappin case,* supra, the California court said that an empty foreign car which had begun its homeward move-men in conformance with rules and customs was in inter-tate commerce. In that case, at least one car had been designated for a spotting on a block for the loading of interstate goods after it had been unloaded of interstate goods and it had started on its journey to the block designated. In the instant case three cars had been designated for their homeward journey and had started on their course. Thus, their interlude of intrastate quality had ceased and the train had assumed an interstate char-acter. *Fayssoux* v. *Seabord Air Lines Ry.,* 109 S. C. 352, 96 S. E. 150; *Hester* v. *Tennessee & W. N. C. R. Co.,* 4 Cir., C. C. A. 166, 233, 254 F. 787; *Kinsella* v. *New York Cent. R. Co.,* 186 App. Div. 856, 175 N. Y. S. 363; *Geer* v. *St. Louis, S. F. & T. R. Co.,* 109 Tex. 36, 194 S. W. 939; *Aldread* v. *Northern Pacific Railway Co.,* 93 Wash. 209, 165 P. 429. It appears that the cars in this case were being returned to D. & R. G. at Provo en route home to their owners out of state. Reg-ular custom was being pursued under order of the Chief Dis-patcher.

Defendant makes much of the fact that these cars could have been used further by defendant, detained by defen-dant's paying demurrage, or sent elsewhere with a load. But those were contingencies which had not happened at the time of the fatal injury. They were rights which de-fendant had not exercised.

There appears to be substantial evidence in the record that these three empty cars which belonged to foreign roads and had come into Utah loaded with interstate freight, had, at the time of deceased's injury, been started back to their owners. The cars were on the first link of their journey. The fact that defendant or someone else had power to interrupt the homeward journey of said cars and send them elsewhere or detain them upon paying de-

murrage is not material, because said power at that time had not been exercised. Until it was exercised the cars continued in the flow of interstate commerce toward their owners. An empty foreign car which had begun its homeward movement in conformity with the rules and customs of carriers is in interstate commerce. *Mappin* v. *Atchison, T. & S. F. R. Co.,* and other cases, supra. If the fact that any carrier could exercise a power to divert or hold said cars while enroute home took from the movement its interstate character, we would have a situation where a car could cross a dozen states on its way home and yet be at all times in intrastate commerce. Because the connecting carrier has power to divert or hold an empty car homeward bound at any point on its homeward journey, these cars even while crossing Colorado, Kansas, or Missouri would not have been in interstate commerce under defendant's viewpoint.

"Where it is intended that the car, after being unloaded, shall be returned by the carrier to the initial point in another state, its interstate status continues during the entire trip." Roberts' Federal Liabilities of Carriers, Second Ed. Vol. 2, Sec. 748.

In *Johnson V. Southern Pacific Co.,* 196 U. S. 1, 25 S. Ct. 158, 163, 49 L. Ed. 363, the United States Supreme Court said:

"Whether cars are empty or loaded, the danger to employees is practically the same, and we agree with the observation of District Judge Shiras, in *Voelker* v. *Chicago, M. & St. P. Railway Co.* [C. C.] 116 F. 867, that 'it cannot be true that on the eastern trip the provisions of the act of Congress would be binding upon the company, because the cars were loaded, but would not be binding upon the return trip, because the cars are empty.' "

In *Johnson* v. *Great Northern R. Co.,* 8 Cir., 178 F. 643, it was held that an injury received while switching empty cars preparatory to their return empty to their point of origin was covered by the federal act. See, also, *Christy* v. *Wabash Railway Co.,* 195 Mo. App. 232, 233, 191 S. W. 241.

There is substantial evidence that at the time of the injury these cars were being moved home to their owners under designation and that no orders to hold or divert the cars had been issued. Under these circumstances it was at least a question for the jury as to whether these cars were moving in interstate commerce.

The judgment of the lower court is reversed. Costs to the appellant.

MOFFAT, C. J., and McDONOUGH, J., concur.

LARSON and PRATT, JJ., dissent.