BEAM, APPELLEE, *v.* BALTIMORE & OHIO RD. CO.,
APPELLANT.

(No. 3657—Decided February 26, 1945.)

*Mr. Ray J. McGowan* and *Mr. Charles F. Scanlon,*
for appellee.

*Messrs. Wise, Roetzel & Maxon,* for appellant.

STEVENS, P. J. Plaintiff (appellee) brought this action in the Court of Common Pleas of Summit county, Ohio, to recover from defendant (appellant) for personal injuries suffered by plaintiff when his feet and legs were crushed by being run over by a freight car operated by defendant at Warren, Ohio.

Plaintiff alleged in his petition that:

"* * * The Baltimore & Ohio Railroad Company is a railroad corporation, and at all times hereinafter mentioned and for a long time prior thereto, owned, operated and controlled an interstate railway through the state of Ohio, and particularly Trumbull county in said state, and various other states, and operated over the same passenger, freight and mixed trains. Plaintiff further avers that at all of the times herein

referred to the defendant was engaged in interstate commerce and traffic by rail, and this action is brought under and by virtue of the Federal Employers' Liability Act of April 22, 1908, and amendments thereto.

"Plaintiff further says that on the 5th day of September, 1941, and prior thereto he was in the employ of the defendant company as a brakeman; that at approximately 1 o'clock p. m. on said date, in the performance of his duties for the defendant as such brakeman, he was on board one of the cars of a moving freight train which was being operated over and along the defendant's track in the city of Warren, Trumbull county, Ohio, when suddenly and without warning to the plaintiff the slack between the freight cars to the rear of the plaintiff was taken up, causing said cars to come in violent contact and in such a manner as to throw the plaintiff from his position on said car and under the wheels of the moving train.

"Plaintiff further says that as a direct result of said occurrence both of plaintiff's legs were cut off at a point seven inches below the knees * * *.

"Plaintiff says that his injuries, disability, pain and suffering, expenses and loss of earnings which he suffered as hereinbefore set forth, were directly and proximately caused by the negligence of the defendant acting by and through its duly authorized employees acting in the scope of their employment, in the following respects, to wit:

"1. In that the defendant, through its engineer, failed to control the slack, which caused the plaintiff to be thrown from said train, when in the exercise of ordinary care such slack could have been controlled.

"2. In that the defendant caused said train, and particularly the car on which plaintiff was riding, to jerk in a sudden, unusual and unexpected manner, when the defendant knew, or in the exercise of rea-

sonable care should have known, the plaintiff's position on said train. * * *''

Plaintiff then alleged damage in the amount of $100,-000, for which he prayed judgment.

The answer of defendant admitted that it was a railroad corporation, operating on said date an interstate railway in Trumbull county, Ohio, but denied that at the time of said occurrence it was engaged in interstate commerce, and that the action was under the Federal Employers' Liability Act; admitted that on said date plaintiff was in its employ as a brakeman, and that as such brakeman he was on board one of the cars of a moving freight train operated over and along defendant's track in Warren, Trumbull county, Ohio, and that his legs were cut off about seven inches below the knees, by the wheel or wheels of a car of said train, but denied the averments of negligence contained in the petition, and that his injuries were caused by any negligence on its part.

As a second defense, defendant pleaded assumption of risk.

When the cause came on for trial, defendant, at the conclusion of plaintiff's evidence, separately moved that each specification of negligence set out in plaintiff's petition be withdrawn from the consideration of the jury; which motions were sustained as to all of such specifications except the specification above set forth marked "1," and one other upon which ruling was reserved by the court. As to this latter, the court withdrew that from the consideration of the jury at the conclusion of all of the evidence.

Defendant then moved for a directed verdict, which motion the court overruled.

The court then permitted plaintiff to amend his petition by adding thereto the specification of negligence hereinabove set forth as "2," and overruled defend-

ant's motion to withdraw that specification of negligence from the jury, and for a directed verdict for defendant.

At the conclusion of all the evidence, defendant moved for a directed verdict, which motion was overruled.

Defendant then presented the following interrogatories for submission to the jury:

"Was the defendant negligent?" and "If so, state fully the particular act or acts of which the negligence consisted." The first was answered "Yes," and the second was answered "We find that the act of negligence on the part of the defendant consisted in the incorrect operation of the brakes and incorrect control of the train at the time of the accident."

Each of said answers was signed by 11 of the jurors.

In addition, the jury returned a general verdict for plaintiff for $75,000.

Motions for judgment notwithstanding the verdict, and for a new trial, were filed and overruled, and judgment was entered on the verdict.

This appeal on questions of law followed.

The first question to be considered is that dealing with the subject of interstate commerce, and the applicability of the Federal Employers' Liability Act.

That act—Title 45, Section 51, Chapter 2, U. S. Code, as amended August 11, 1939—provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * re-

sulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

It is apparent from a reading of the above provision of the act that, if defendant, a common carrier by railroad, was, at the time of plaintiff's injury, engaged in interstate or foreign commerce, as those terms are defined by statute, and construed by the courts, then plaintiff, concededly an employee of defendant and alleged to be acting within the scope of his employment at the time of his injury, was entitled to bring his action for negligence against defendant, under the provisions of the Federal Employers' Liability Act.

What does this record disclose upon the subject of interstate commerce?

The 23 cars of iron ore being hauled from Cleveland, Ohio, to Warren, Ohio, by the defendant were in part ore transported by the steamer Crete from Superior, Wisconsin, and in part ore carried by the steamer Angeline from Marquette, Michigan, to Cleveland, Ohio.

While these steamers were in transit and before they reached the lower Lake Erie port, W. A. Gosewisch, of the purchasing department of Republic Steel Corporation, was called by H. L. Gobeille, the assistant manager of the marine department of the Cleveland Cliffs Iron Company, which company acted as agent for Republic Steel Company, and told of the movement of ore in these boats. Gosewisch then ascertained which of the

Republic Steel Company plants was to receive the ore, and advised the Cleveland Cliffs Iron Company, by a written confirmation of telephone conversation, what disposition was to be made of the ore upon arrival.

Plaintiff's exhibit G is demonstrative of the procedure followed:

> "Republic Steel Corporation
> "Purchasing Department
> "Cleveland, Ohio
>
> "No. 572.
> "August 29, 1941.
>
> "Mr. A. E. R. Schneider,
> Cleveland-Cliffs Iron Co.,
> Union Commerce Bldg.,
> Cleveland, Ohio.
>
> "Confirming telephone conversation of ———— in regard to:

| "Steamer | Crete |
|----------|-------|
| "Ore | Sagamore |
| "Tons | 8800 |
| "Due to arrive | 9/2 |
| "Dock at | Corrigan McKinney |
| "Ship to | Warren |
| "Via | B & O |
| "Equipment | Hoppers |

> "Republic Steel Corporation
> "W. A. Gosewisch :CR
> "Purchasing Department."

It appears that both of the vessels hereinbefore referred to were unloaded almost immediately upon arrival at the Corrigan-McKinney dock in Cleveland, their contents being placed in freight cars for which arrangement had been previously made by the Republic Steel Company, and that part of the cars so loaded made up in part the train upon which plaintiff was in-

jured. That train then left the docks at Cleveland, and proceeded in a substantially continuous movement to its final destinations—*viz.*, Warren and Youngstown, Ohio.

If the transportation of the ore by the ships is to be considered as terminated upon the arrival of the ships and their contents at Cleveland, Ohio, and the further movement of the ore by railroad is an independent transaction, then, of course, the shipment of the ore from Cleveland to Warren was an intrastate shipment.

However, it has been said that the tests to be applied in determining whether a shipment is one of interstate commerce do not depend on "through billing, uninterrupted movement, continuous possession by the carrier, nor unbroken bulk," as none of these "is an essential of a through interstate shipment." *B. & O. S. W. Rd. Co.* v. *Settle,* 260 U. S., 166, at page 171, 67 L. Ed., 189, 43 S. Ct., 28.

"2. * * * Every part of every transportation of articles of commerce in a continuous passage from a commencement in one state to a prescribed destination in another is a transaction of interstate commerce.

"Every carrier who transports such goods through any part of such continuous passage is engaged in interstate commerce, whether the goods are carried upon through bills of lading or are rebilled by the several carriers." *United States* v. *Colorado, etc., Rd. Co.,* 157 F., 321, 85 C. C. A., 27, 15 L. R. A. (N. S.), 167, 13 Ann. Cas., 893.

"5. Whether transportation is intrastate or interstate * * * is determined by continuity of movement combined with unity of plan." *Sherman* v. *Southern Pacific Co.,* 34 Cal. App. (2d), 490, 93 P. (2d), 812.

"1. If one car in a train is engaged in an interstate

movement, the whole train is engaged in 'interstate movement' * * *." *Smith* v. *Salt Lake & Utah Rd. Corp.*, 99 Utah, 393, 105 P. (2d), 338.

Tò us it seems clearly apparent that the entire transit of the ore in question from Marquette, Michigan, and Superior, Wisconsin, to Warren and Youngstown, Ohio, was a continuous movement, accomplished under a unity of plan to move said ore in interstate commerce.

Such being our conclusion, we hold that the plaintiff was legally justified in bringing this action under the Federal Employers' Liability Act; and, under this evidence, we further hold that the trial court did not err in instructing the jury as a matter of law that the movement being made at the time of plaintiff's injury was one in interstate commerce. See *Fairport, Painesville & Eastern Rd. Co.* v. *Meredith*, 46 Ohio App., 457, 189 N. E., 10; affirmed, 292 U. S., 589, 78 L. Ed., 1446, 54 S. Ct., 826.

As to appellant's assignment of error 1, and all of its subheads, we find no error prejudicial to the substantial rights of appellant.

Under appellant's assignments of error, the next question for consideration is the issue of defendant's alleged negligence.

The two specifications of negligence hereinabove set forth are based upon the duty allegedly owed to the plaintiff by defendant to exercise reasonable care in the operation of its equipment so as not to injure plaintiff; and defendant, under the federal statute, is made answerable for the negligent acts of its employees.

Negligence under the federal act remains what it has always been—*i. e.*, the violation of a duty owed to him who complains of its violation; "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or do-

ing what such a person under the existing circumstances would not have done." *Tiller, Exr.,* v. *Atlantic Coast Line Rd. Co.,* 318 U. S., 54, at page 67, 87 L. Ed., 610, 63 S. Ct., 444, 143 A. L. R., 967.

In this case we have the evidence (expert and lay) of the plaintiff, exhibiting the theory upon which plaintiff claims his right to recover from defendant, which, if true, demonstrates the defendant's violation of the duty alleged to be owing to plaintiff.

Opposed to plaintiff's evidence is that produced by defendant, which, in number of witnesses, greatly exceeds that adduced by plaintiff. The gravamen of defendant's contention, supported by its evidence, is that plaintiff's injury could not and did not occur as claimed by plaintiff's witnesses.

This is the typical negligence case, where the evidence on one side is diametrically opposed to that produced by the other side. In such situation, submission to the jury of the sharply contradictory claims is required, unless the court can say as a matter of law that, from a consideration of all the evidence, reasonable minds may reasonably reach but one conclusion, and that adverse to the claims of plaintiff; in which event it is the duty of the court to direct a verdict for defendant.

We have carefully examined the entire contents of this record, and from that examination we are unable to say that the trial court was required to so resolve the evidence as to necessitate a directed verdict for defendant.

On the contrary, we are of the opinion that there was introduced, and properly admitted, substantial evidence upon which reasonable minds might reasonably reach different conclusions. In such event, the case was one which was properly submissible to a jury, as was done by the trial court. See *Grand Trunk Western*

Ry. Co. v. Heatlie, 48 F. (2d), 759; Toledo, St. L. & W. Rd. Co. v. Howe, 191 F., 776.

In an action under the Federal Employers' Liability Act—

"3. Probative facts from which negligence and its causal relation to an accident may reasonably be inferred, warrant submission of those issues to the jury." Tennant, Admx., v. Peoria & Pekin Union Ry. Co., 321 U. S., 29, 88 L. Ed., 520, 64 S. Ct., 409.

Apropos of the limitation on the right of a reviewing court to substitute its judgment for that of a jury, the same case states:

"8. Courts are not free to reweigh the evidence and set aside a jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

It is our conclusion that, as to appellant's assignment of error 2, and all of its subheads (a to d, inclusive), no prejudicial error intervened.

It is next claimed by appellant that the trial court erred in the admission of certain evidence offered by plaintiff, and in refusing to withdraw from the consideration of the jury certain evidence upon motion made by appellant therefor.

It is the contention of appellant that the court erred in permitting plaintiff to testify as an expert witness, and in allowing the answers thus elicited from plaintiff to constitute the basis for hypothetical questions addressed to plaintiff's witness Kirkpatrick.

The uncontradicted evidence shows that plaintiff had been a brakeman in the employ of defendant for many years prior to his injury; that he was required to familiarize himself with the operation of trains, including the braking thereof; that he was subjected to periodic examinations thereon, and received statements

from the railroad company showing that he had satisfactorily passed his examinations.

His experience, plus his technical study of manuals furnished by defendant, in the opinion of the trial court qualified him to testify as an expert witness upon those subjects.

Whether he was qualified by education or experience to testify as an expert, was a matter to be determined by the trial court, whose decision thereon will not be disturbed unless clearly shown to be erroneous. *Bradford Glycerine Co.* v. *Kizer,* 113 F., 894; 17 Ohio Jurisprudence, Evidence, Section 334.

We find no prejudicial error in the ruling of the trial court permitting plaintiff to testify as an expert, nor in the use of answers given by plaintiff as the factual predicate for hypothetical questions directed to the witness Kirkpatrick.

We are further of the opinion that the court did not err in permitting the witness Kirkpatrick to express an opinion "that the release of the air brake in front of the depot was not proper operation of the locomotive." See *Jones* v. *Norfolk Southern Ry. Co.,* 176 N. C., 260, 97 S. E., 48; *Ohio & Indiana Torpedo Co.* v. *Fishburn,* 61 Ohio St., 608, 56 N. E., 457; 76 Am. St. Rep., 437.

Appellant next claims that one of counsel for plaintiff was guilty of misconduct because of the character of the argument made by him in the closing argument to the jury.

We have carefully examined that argument in its entirety, and it is our unanimous conclusion that no error prejudicial to the appellant's substantial rights occurred in argument.

The claimed error in the charge of the trial court involves the following circumstances of the trial:

The court had given to the jury, at the request of

the defendant, several instructions before argument, and, after argument, had fully instructed the jury, and had confined its instruction on the subject of damages to the following:

"You will consider the nature and extent of the plaintiff's injury, the shock to his nervous system, the pain and suffering he has undergone, the impairment of his earning capacity, the future pain and suffering which you find the plaintiff is reasonably certain to undergo, and the permanency of his injury.

"In considering the question of decreased earning capacity you will take into account the plaintiff's age at the time of the injury, his state of health and ability to earn money, and the amount of his earnings at the time he was injured. Remember it is your duty, if you find the plaintiff should recover, to award him such an amount of money that will fairly and justly compensate him for his injury and not an amount that will extravagantly compensate him. Be just and fair to both plaintiff and defendant."

At the conclusion of the charge, one of counsel for the defendant addressed the court as follows:

"Let the record show the defendant at this time asked the court to charge the jury that in considering the matter of damages they can consider only such loss of earnings as the evidence shows to be reasonably certain to occur in the future, that in determining such amount they can award only the present value of such amount as they find from the evidence to be reasonably certain to occur.

"The court is not requested to charge in this specific language but to charge correctly upon the subject matter covered by this request."

Thereupon counsel and court withdrew from the court room, and later returned; and the court further instructed the jury as follows:

"The court further charges you, ladies and gentlemen of the jury, that in considering the matter of damages, in the event you feel that the plaintiff is entitled to recover, you can consider only such loss of earnings that the evidence shows to be reasonably certain to occur in the future, and that in determining such amount you can only award the present value of such amount as you feel from the evidence to be reasonably certain to occur in the future."

The first claim is that the court committed prejudicial error by the use of the word "feel" instead of the word "find" in the foregoing charge.

The mistake was unfortunate, but there is nothing in the record to even remotely indicate that the defendant was prejudiced thereby; on the contrary, the language used in some of the charges given before argument, and at different places in the general charge, cautioning the jurors against being influenced by their feeling or sympathy, and to base their verdict upon facts as they find them to be, renders it highly improbable that such mistake misled or had any effect upon the jury in this case.

Over-nice distinctions in the use of words should not be resorted to by reviewing courts in the examination of the proceedings of trial courts, unless, in a given instance, men of ordinary intelligence would be likely to be misled in the performance of their duties as jurors.

It is also claimed that it was error to direct the jury to consider impairment of earning capacity as an element of damages, because "there was no evidence from which the jury could determine the extent of impairment of plaintiff's earning capacity."

We are of the opinion that the rule invoked in behalf of this contention has no application to the facts and circumstances of the instant case.

Damage to earning capacity in the instant case was not special damage: it was a damage implicit in the injury, a damage plainly to be seen and understood by any jury of ordinary men and women. Moreover, the evidence disclosed that plaintiff's vocation was that of a railroad brakeman and had been for years; that he was earning $280 a month; that his expectancy of life was about 25 years; that both of plaintiff's legs were cut off below the knees; that by reason of his injury he had been necessarily idle for two years; and that the stumps of his legs at the time of trial were ulcerated from trying to wear his 11½ pounds of artificial legs and feet.

That was not only ample evidence of present damage to earning capacity, but also some evidence of a reasonably certain loss of earning capacity to occur in the future; it was perfectly apparent to an ordinary person that in the future plaintiff could not follow his vocation of brakeman, and it was reasonably certain that there were scores of other vocations which his injuries would prevent him from following.

Our conclusion is that it was not error for the trial court to submit to the jury the question of the impairment of the earning capacity of the plaintiff as an element of damage, nor do we find any prejudicial error in any of the other respects concerning which complaint is made of the court's charge.

It is also asserted by appellant that the court erred in overruling the motion of defendant for a new trial because the verdict of the jury is manifestly against the weight of the evidence and is not sustained by sufficient evidence.

We are unable to say that the verdict of the jury is manifestly against the weight of the evidence, or is not sustained by sufficient evidence. There was ample evidence in this record, which, if believed by the jury,

would have warranted the return of a verdict for plaintiff, and we are not disposed to disturb the jury's finding thereon.

It is also claimed that the damages are excessive, and appear to have been given under the influence of passion and prejudice.

There were no interrogatories propounded to the jury, answers to which would have manifested the elements entering into the amount of the general verdict.

The verdict, while large, is such that we are unable to say it is excessive, taking into consideration the nature and extent of the injuries, their permanency, and the disabling character thereof.

There appears to us to be nothing in this record upon which a claim of passion and prejudice could properly be predicated.

It is our opinion that both parties hereto had a fair, full and impartial trial, free from prejudicial error, and that the judgment of the trial court should be, and is hereby, affirmed.

*Judgment affirmed.*

WASHBURN, J., and DOYLE, J., concur.