HARRIS, ADMINISTRATRIX, ETC. *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 18,187. Filed December 18, 1952. Rehearing denied March 11, 1953. Transfer denied April 22, 1953.]

*Hughes & Hughes,* of Greencastle, *J. Gordon Gibbs,* of Danville, and *Kivett, Chambers, Vernon & Kivett,* of Indianapolis, for appellant.

*Owen S. Boling* and *Edmond W. Hebel,* both of Plainfield, and *Gillen & Lyon,* of Greencastle, for appellee.

BOWEN, J.—This is an appeal from a judgment in an action by appellant as administratrix of the estate of decedent, one Joseph H. Harris, for damages for the wrongful death of such decedent. Issues were joined upon appellant's amended complaint and an answer by the appellee admitting the allegations of rhetorical paragraphs one to three, and denying the allegations of rhetorical paragraphs four to seven of the complaint. The cause was tried by a jury in the Putnam Circuit Court, and the jury returned a verdict for the defendant upon which judgment was rendered. Plaintiff filed a motion for a new trial which was overruled, and this appeal followed.

Error assigned for reversal is the overruling of appellant's motion for a new trial. Grounds of the motion for a new trial were that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. Other specifications of error in the motion for a new trial assert alleged error in the giving of certain instructions and in the refusal to give certain instructions.

From the record it appears that on the morning of the accident, it became necessary for the employees of the defendant to take down a street light wire so as to permit the trimming of trees adjacent to the wire. This

wire, belonging to appellee, extended southeasterly across Main Street (U. S. Route No. 36) in the City of Danville, Indiana, and was fastened at each end near the top of two poles, one located about 120 feet north of Main Street and on the west side of Morgan Street, a north and south street intersecting Main Street on the north side, and the other pole was located about six inches inside the south curb line of Main Street, and about three to five feet west of about what would have been the east curb line of Morgan Street, if Morgan Street had been extended south of Main Street. Morgan Street is a narrow unimproved street approximately 15 feet wide, and Main Street is a part of the main route between Indianapolis, Indiana, and Decatur, Illinois, is paved, and is about 40 feet wide from the curb to curb at the place of accident.

When Herbert Watts, an employee of appellee, took down the wire in question in order to facilitate the trimming of trees, he disconnected the wire at the south pole, rolled it up and hung it up on the pole to the north. That same afternoon after the tree trimming was completed, he unrolled the wire from the north pole, took it out on the street so it would be flat down from one side to the other, lying flat on the surface of the street.

John McCloud, who did the tree trimming, was not employed by the appellee, and Watts tied a rope 30 feet long to the south end of the wire and had McCloud stand on the same at the point where it was fastened to the wire. Watts waited for traffic to clear across Main Street and three automobiles going east passed over the wire. When this particular traffic had cleared, Watts started up the pole, facing to the south, and had gone up about 15 feet, and was getting ready to hook his safety belt around the pole when the accident occurred. When the accident occurred, the rope was pulled away

from him, and he turned to see Mr. Harris' feet in the air and heard his head crack on the pavement. Mr. Watts immediately came down the pole and saw an automobile 50 to 100 feet east of the pole. The decedent was unconscious, and at no time regained consciousness and died soon after. Watts testified that he gave no warning and made no effort to arrange to have traffic stopped on the street and put out no signs.

The evidence established that Harris had lived in the vicinity of Main Street in Danville for many years prior to the accident. He lived to the southeast of the intersection. Before he went into the street, he was on the north side of Main Street, and as he went into the Main Street, he was headed in the direction of his home, and at the time of the accident in question, he was standing about three feet south of the north curb line and six feet east of the east line of Morgan Street.

A witness for the plaintiff, one Henry Dalton, testified that he saw the decedent walking at the time of the accident on the north side of Main Street about three feet south of the north curb of Main Street and about six feet east of Morgan Street line. That he saw the wire strike the decedent somewhere near the knees and the rear, which elevated his legs and the back of his head struck the pavement. This witness saw an automobile approach from the west on the south side of the Main Street, and that the wire was about one foot above the pavement when the automobile struck it. He testified that the automobile which struck the wire made a stop at a point about 100 feet west of the wire, then it picked up speed again, and at the time it struck the wire, it was traveling ten to twelve miles per hour; that the wire was lowered about the time the car stopped. Before it was lowered, he testified that the wire was probably at shoulder height in the middle of the street.

There is conflict in the evidence as to where the wire was at the time the automobile in question came in contact with it and forced it against the legs of the decedent, thereby throwing him into the air, and causing the injuries in question. One witness contended that the tree trimmer was standing on the rope and that the wire was flat on the ground, and appellant's witness testified that the wire was about one foot up off the ground when the car struck.

One witness testified that prior to the accident, he saw Harris take hold of the wire which was up off the ground at the north side of Main Street. When Mr. Harris took hold of the wire, it was west of the line of Morgan Street. It was some seconds after he had taken hold of the wire until he was struck, and that he changed his position and went eastward. This witness testified that prior to the time of the accident, Mr. Harris lifted the wire, but at the time of the accident, he did not recall seeing him have the wire in his hands.

On cross-examination, appellant's witness, Mr. Watts, testified in answer to the question of whether anything was said by anybody at any time as to how the wire got in touch with the automobile, Watts answered, "Naturally I was wondering how it happened, and I heard someone say he had hold of the wire." He was then asked the following question: "Who had hold of the wire—the man lying on the pavement?" The answer, "Yes." Watts also testified that he had never raised the wire at any time.

The evidence shows that the appellee in connection with its preparation for the trial made extensive but unsuccessful efforts to locate the witness, John McCloud, who was assisting Watts at the time of the accident.

From the physical facts and circumstances as established by the evidence, it must be admitted that the car

in some manner struck the wire and that when the wire struck Harris violently from behind, he was at least 15 feet east of the point where the car first came in contact with the wire.

The testimony further showed that the appellant's decedent had worked for the appellee company for a short time some years before the accident as a ground man digging holes.

The assignments of error present for the consideration of this court the question of alleged error by the trial court in giving certain instructions over the objections of the appellant. In considering alleged error in the giving of instructions, it is necessary that we examine such instructions and the objections thereto to consider whether such instructions were erroneous statements of legal principles and whether the jury was thereby misled. *Cleveland, C. C. & St. L. Railway Co.* v. *Miller* (1905), 165 Ind. 381, 74 N. E. 509; *Beam* v. *Baltimore & Ohio Railroad Co.* (1945), (Ohio) 68 N. E. 2d 159; *Grand Trunk Western Railway Company* v. *Cather* (1929), 92 Ind. App. 563, 167 N. E. 551.

Instruction No. 6 which was given by the court over the objection by the appellant was as follows:

> "The plaintiff's decedent is held to have had knowledge of such danger as may be shown in the evidence to have been obvious and to have been discernible by a reasonable observation and use of the senses, provided the circumstances were such as to fix knowledge in his mind and not to justify forgetfulness.
>
> "Mere momentary forgetfulness, if any, of a danger, if any, which forgetfulness is not induced by some sudden and adequate disturbing cause, may itself constitute contributory negligence barring a recovery. Mental abstraction, if any, or lapse of memory, if any, in the presence of a known danger,

relieves a person from contributory negligence only where there is a reasonable cause therefor, one apart from mere inattention.

"Ordinary prudence requires every person who is in the full enjoyment of his faculties of hearing and seeing, before attempting a dangerous act, or operation, or entering into a dangerous situation, to exercise his faculties for the purpose of discovering and avoiding peril. A duty rests upon everyone to exercise his intelligence to the fullest extent, and to make such use of his external senses in the interest of his own safety as is reasonable under the circumstances; and the person must exercise reasonable care to observe the conduct of another person so far as such conduct affects his own safety; and if you should find from the evidence in this case in the light of the principles of law which I have stated to you that the plaintiff's decedent did not make such reasonable use of his senses of sight or hearing in the interest of his own safety under the circumstances shown by the evidence to have existed, then I instruct you that the plaintiff would not be entitled to recover and your verdict should be for the defendant."

This instruction is a mandatory instruction, and it omits any reference to the necessity that the actions of the plaintiff's decedent should be found by the jury to be the proximate cause of his injuries. It is clear that the jury may well have been misled by such erroneous instruction. As this court stated in *Nepsha* v. *Wozniak* (1950), 120 Ind. App. 362, 92 N. E. 2d 734, ". . . it is no longer subject to controversy in this jurisdiction that 'where an instruction assumes to set out all the elements essential to a recovery, and directs the jury to return a verdict for the plaintiff if they find such elements to have been established, but omits an essential element, the instruction is erroneous and cannot be cured by other instructions.' *Cochran* v. *Wimmer* (1948) 118 Ind. App. 684, 691, 81 N. E. 2d 790; *City*

*of Decatur* v. *Eady* (1917), 186 Ind. 205, 115 N. E. 577 . . ."

In *Indiana Service Corp.* v. *Schaefer* (1935), 101 Ind. App. 294, 199 N. E. 158, in passing upon a similar question this court stated in referring to an instruction relating to contributory negligence: ". . . It is to be noted that this instruction entirely ignores the element of proximate cause, and informs the jury that upon the proof of certain facts therein enumerated, appellant would be liable. It is well settled that a person is legally liable for negligent conduct only when his negligence is a proximate cause of the injury suffered. The instruction is mandatory in character, and when such an instruction wholly omits an essential element necessary to be proven in order to establish liability and permit recovery, it is erroneous. *Indianapolis Street Railway Co.* v. *Ray* (1906), 167 Ind. 236, 78 N. E. 978; *Lake Shore, etc., R. Co.* v. *Johnson* (1909), 172 Ind. 548, 88 N E. 849; *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 97 N. E. 320; *Holliday & Wyon Co.* v. *O'Donnell* (1913), 54 Ind. App. 95, 104, 101 N. E. 642; *Union Traction Co.* v. *Elmore* (1917), 66 Ind. App. 95, 98, 116 N. E. 837; *Goodwine* v. *Ayres* (1922), 78 Ind. App. 396, 136 N. E. 24; *Lauer* v. *Roberts* (1934), 99 Ind. App. 216, 192 N. E. 101."

While, as appellee asserts, no particular words are required in including this element of proximate cause, an examination of Instruction No. 6 fails to disclose any reference to words which could, in the remotest degree, have any bearing upon the requirement that the actions of the appellant's decedent were the proximate cause of the accident in question.

Instruction No. 11 which also relates to "incurred risk" and "contributory negligence" is erroneous for the

reason that it wholly omits any reference to the requirement that the actions of plaintiff's decedent must have been the proximate cause of the accident in question, and such instruction was mandatory.

The same erroneous omission of the element of proximate cause appears as to instruction No. 12, and such omission is challenged by appellant's objections and assignments of error.

The appellee in the instant case seeks to avoid the effect of these erroneous mandatory instructions which fail to include the element of proximate cause by their contention that the record shows the appellant's decedent to have been contributorily negligent as a matter of law, and insists that this court must so hold.

It is only in cases where minds of reasonable men could reach but one conclusion, and where facts exist from which reasonable minds could draw but the one conclusion that a plaintiff is guilty of contributory negligence, that this court can say that a course of conduct constitutes contributory negligence as a matter of law. *Opple, et al.* v. *Ray* (1935), 208 Ind. 450, 195 N. E. 81; *Grand Trunk etc. R. Co.* v. *Cather, supra; Associated Truck Lines* v. *Velthouse* (1949), 227 Ind. 139, 84 N. E. 2d 54.

Considering the evidence most favorable to appellee from the record, and as heretofore noted in this opinion, it does not appear to this court that reasonable minds are led inescapably to the one conclusion that appellant's decedent was guilty of contributory negligence as a matter of law.

The lower court erred in giving the mandatory instructions complained of, numbered 6, 11, and 12, over the objections of appellant, and such action of the trial

court constituted prejudicial error which could not be cured by other instructions. The court should have sustained appellant's motion for a new trial.

Other alleged error assigned in appellant's motion for a new trial may not arise on a retrial of this cause; and we shall not unduly extend this opinion to discuss the same.

The judgment in this cause is reversed with instructions to the trial court to sustain appellant's motion for a new trial.

NOTE.—Reported in 109 N. E. 2d 433.