398 So.2d 291 (1981)
Ex parte LOUISVILLE & NASHVILLE RAILROAD COMPANY.
(In re: State of Alabama v. Louisville & Nashville Railroad Company).
No. 79-463.
The Supreme Court of Alabama.
March 6, 1981.
*292 M. R. Nachman, Jr. of Steiner, Crum & Baker, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and Herbert I. Burson, Jr., and Ronald J. Bowden, Asst. Counsel, Department of Revenue, and Asst. Attys. Gen., for respondent.
ALMON, Justice.
This appeal presents the question of whether Alabama's gross receipts tax upon a railroad's earnings from "intrastate business" applies to receipts generated by the L & N Railroad's movement of goods between two points in Alabama. The Court of Civil Appeals held these receipts are taxable under the statute. We reverse.
The railroad gross receipts tax statute presently provides:
In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the business of operating a railroad in the state of Alabama for the privilege of engaging in such business; said license tax or privilege tax shall be... in a sum equal to two and one-half percent of the gross receipts in excess of $150,000.00 of such railroad from all intrastate business of such railroad within the state of Alabama during the preceding year, the gross intrastate earning to be determined by the amount received from intrastate business.

Code 1975, § 40-21-57 (emphasis supplied).
The receipts the State seeks to tax under this statute were derived from L & N's movement of various products to and from the Port of Mobile. These movements, stipulated by the parties as typical of the transactions at issue, consist of both export and import shipments. Export shipments involve transportation of paper goods from Selma to the Port, where the goods are then off-loaded onto a ship and subsequently exported. *293 Import shipments involve the movement of iron ore pellets from Lima, Peru, to Birmingham via the Port; L & N's role in these shipments is limited to transporting the ore from the Mobile docks to Birmingham.
No questions concerning taxes due under the statute arose until 1976, when L & N petitioned the Department of Revenue for a refund of taxes paid on receipts earned in 1972 and 1973. L & N asserted taxes on these movements were erroneously paid because of a clerical and/or computer error, and that no taxes were due on these "interstate" shipments. The Department denied L & N's petition and soon thereafter entered assessments for similar receipts earned during 1974, 1975 and 1976.
It is clear from recent decisions of the United States Supreme Court that, under proper circumstances and regardless of whether the transaction is characterized as interstate or intrastate, the State may tax the gross receipts generated by L & N's services without offending either the Commerce Clause, Art. I, § 8, cl. 3, or Import-Export Clause, Art. I, § 10, cl. 2, of the Federal Constitution. Washington Revenue Department v. Stevedoring Association, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978); Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).[1] That fact alone, however, does not necessarily justify the imposition of the tax to the transactions in this case. As we have stated, recent pronouncements of the United States Supreme Court which enlarge the permissible area of state taxation cannot change the intent or enlarge the scope of enactments passed by our Legislature. State v. Southern Electric Generating Co., 274 Ala. 668, 151 So.2d 216 (1963). Therefore, the question is not whether the State may, under prevailing caselaw, impose a tax upon the gross receipts earned from these transactions. Rather, the controlling issue is whether, in originally enacting this statute, the Legislature intended to tax these transactions. To determine that intent, we must look to the nature of the activity involved as well as the "history of the times" when the statute was enacted. Champion v. McLean, 266 Ala. 103, 95 So.2d 82 (1957); Houston County v. Martin, 232 Ala. 511, 169 So. 13 (1936); Standard Oil v. State, 55 Ala.App. 103, 313 So.2d 532 (Ala. Civ.App.1975).

I
We begin by noting that the issue before us cannot be resolved by simply resorting to the literal meaning of the phrase "intrastate business." Nor can the proper resolution be reached by dissecting the phrase into two words and applying their respective definitions. Numerous decisions have used the terms "business" and "commerce" interchangeably in the context of state taxation of commerce. See, e. g., Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68 (1937); Shannon v. Streckfus Steamers, 279 Ky. 649, 131 S.W.2d 833 (1939). An even greater number of decisions have indicated that whether an activity is truly intrastate or interstate depends upon many factors beyond whether the activity occurred within the boundaries of one or more states. See, e. g., The Daniel Ball, 77 (Wall.) U.S. 557, 19 L.Ed. 999 (1870); Merchants Fast Motor Service, Inc. v. I. C. C., 528 F.2d 1042 (5th Cir. 1976); United States v. Philadelphia & R. Ry. Co., 232 F. 946 (D.C.Pa.1916); HC & D Moving & Storage Co. v. Yemane, 48 Haw. 486, 405 P.2d 382 (1965); Beam v. Baltimore & O. R. Co., 77 Ohio App. 419, 68 N.E.2d 159 (1945).
As a general rule, it is both the origin and intended destination of a transaction which governs whether the transportation is interstate; and once the movement acquires its interstate character, it remains until the final destination is reached. HC & D Moving & Storage Co. v. Yemane, supra; *294 Shannon v. Streckfus Steamers, supra; State v. Department of Public Service, 1 Wash.2d 102, 95 P.2d 1007 (1939). Furthermore, "[t]he fact that several different and independent agencies are employed in transporting the commodity, some acting entirely in one State, and some acting through two or more States, does in no respect affect the character of the transaction." The Daniel Ball, 77 (Wall.) U.S. 557, 565, 19 L.Ed. 999 (1870). Accord, Merchants Fast Motor Lines, Inc. v. I. C. C., 528 F.2d 1042 (5th Cir. 1976). Here the transactions were import and export shipments. Based upon the foregoing, we are of the opinion that L & N's movements whether they occurred in 1975 or 1875constitute the intrastate segment of interstate commerce. That finding, however, does not resolve the issue, for "even if it be found that certain transactions are in fact interstate commerce, such conclusion does not answer the further inquiry whether a particular assertion of power by a State over such transactions offends the Commerce Clause." Central Greyhound Lines of New York v. Mealey, 334 U.S. 653, 655, 68 S.Ct. 1260, 1262, 92 L.Ed. 1633 (1948).

II
The United States Supreme Court has been more receptive to those regulatory measures affecting interstate commerce which are based upon a state's police power than it has been to those measures based upon a state's power to tax. Freeman v. Hewitt, 329 U.S. 249, 253, 67 S.Ct. 274, 277, 91 L.Ed. 265 (1946). The Court's early attitude towards state taxation of interstate commerce was illustrated in Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933), wherein it was stated:
The States may not impose direct burdens upon interstate commerce, that is, they may not regulate or restrain that which from its nature should be under the control of the one authority and be free from restrictions save as it is governed in the manner that the national legislature constitutionally ordains. This limitation applies to the exertion of the State's taxing power as well as to any other interference by the State with the essential freedom of interstate commerce. Thus, the States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it.

290 U.S. at 8-9, 54 S.Ct. at 36-37 (footnote omitted and emphasis supplied). It was upon this basis, i. e., an impermissible burden upon interstate commerce, that the Court struck down many gross receipts tax statutes. See, e. g., Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed 272 (1939); Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365 (1938); Philadelphia & Southern SS Co. v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200 (1887); Fargo v. Michigan, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888 (1887).
Tax immunity for interstate commerce did not remain absolute, however. In 1938, the Court's decision in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938), demonstrated a philosophical change in the Court. In that case it was indicated that interstate commerce was not totally immune from state regulation, that it should pay its own way, and that certain taxes could be levied on interstate commerce as long as the tax was fairly apportioned. See also, Central Greyhound Lines of New York, Inc. v. Mealey, 334 U.S. 653, 68 S.Ct. 1260, 92 L.Ed. 1633 (1948).
Despite the conservative position adopted by the Court, some gross receipts taxes were upheld in limited circumstances. Such taxes were sustained against constitutional attack when the tax was imposed "in lieu of" all other taxes the state could levy upon the taxpayer. See, e. g., Illinois Central RR. v. Minnesota, 309 U.S. 157, 60 S.Ct. 419, 84 L.Ed. 670 (1940); Pullman v. Richardson, 261 U.S. 330, 43 S.Ct. 366, 67 L.Ed. 682 (1923); United States Express Co. v. Minnesota, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459 (1912). In this context, the gross receipts tax was considered a fair substitute for *295 other taxes such as property taxes, and could be imposed as long as it was a fair equivalent to other tax burdens and was not levied in addition to other taxes. See New Jersey Bell Tel. Co. v. State Board of Taxes, 280 U.S. 338, 50 S.Ct. 111, 74 L.Ed. 463 (1930); Meyer v. Wells Fargo & Co., 223 U.S. 298, 32 S.Ct. 218, 56 L.Ed. 445 (1912).
Gross receipts taxes were also sustained when the tax was imposed upon some purely local activity which justified the exercise of the state's taxing power. See, e. g., Memphis Natural Gas Co. v. Stone, 335 U.S. 80, 68 S.Ct. 1475, 92 L.Ed. 1832 (1938); Coverdale v. Arkansas-Louisiana Pipeline Co., 303 U.S. 604, 58 S.Ct. 736, 82 L.Ed. 1043 (1938).[2] But the theory of "local activity" as a basis for taxation does not permit an abstract segmentation of the integral parts of interstate commerce. The Court has recognized that:
[i]f the only thing necessary to sustain a state tax bearing upon interstate commerce were to discover some local incident which might be regarded as separate and distinct from "the transportation or intercourse which is" the commerce itself and then to lay the tax on that incident, all interstate commerce would be subjected to state taxation and without regard to the substantial economic effects of the tax upon the commerce. For the situation is difficult to think of in which some incident of an interstate transaction taking place within a State could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the States and necessarily involves "incidents" occurring within each State through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as "separate and distinct" or "local" and thus achieve its desired result.
Nippert v. City of Richmond, 327 U.S. 416, 423, 66 S.Ct. 586, 589, 90 L.Ed. 760 (1946).
The practical application of this local/interstate dichotomy is illustrated in Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68 (1937).[3] In that case the State of Washington imposed a tax upon the gross receipts earned by the Appellant-Stevedoring Company from its business of loading and unloading ships in Puget Sound. The Court sustained the tax upon receipts earned from one aspect of the Company's business, but held the statute invalid as applied to receipts earned from the other activities. In the Court's view, the Company's business of "supplying longshoremen to shipowners or masters without directing or controlling the work of loading or unloading, [was] not interstate or foreign commerce, but rather a local business, and subject, like such business generally, to taxation by the state." 302 U.S. at 94, 58 S.Ct. at 74. The other activities, however, were different in nature:
The business of appellant, in so far as it consists of the loading and discharge of cargoes by longshoremen subject to its own direction and control, is interstate or foreign commerce.
Transportation of a cargo by water is impossible or futile unless the thing to be transported is put aboard the ship and taken off at destination. A stevedore who in person or by servants does work so indispensable is as much an agency of commerce as shipowner or master....
The business of loading and unloading being interstate or foreign commerce, the state of Washington is not at liberty to tax the privilege of doing it by exacting *296 in return therefore a percentage of the gross receipts.
302 U.S. at 92, 94, 58 S.Ct. at 73, 74.
Similarly, in Spector Motor Service v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951),[4] the Court noted:
Our conclusion [striking down a state tax based upon net income received from business transactions within the state as applied to activities which were exclusively interstate in character] is not in conflict with the principle that, where a taxpayer is engaged both in intrastate and interstate commerce, a state may tax the privilege of carrying on intrastate business and, within reasonable limits, may compute the amount of the charge by applying the tax rate to a fair proportion of the taxpayer's business done within the state, including both interstate and intrastate.... The same is true where the taxpayer's business activity is local in nature, such as the transportation of passengers between points within the same state, although including interstate travel....
340 U.S. at 609-10, 71 S.Ct. at 512 (citations omitted).
Finally, in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and Washington Revenue Department v. Stevedoring Association, 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978), the Court embarked upon a new course in the area of state taxation of interstate commerce. In Complete Auto the Court overruled the rule in Spector Motor Service "that a state tax on the `privilege of doing business' is per se unconstitutional when ... applied to interstate commerce," 430 U.S. at 289, 97 S.Ct. at 1084, and held that a state could impose an apportioned tax upon the gross receipts derived from a segment of interstate commerce conducted entirely within the taxing state.[5] In Washington Department of Revenue the Court overruled Puget Sound and held that a state tax is not necessarily invalid because it is imposed directly on the privilege of conducting interstate business. It is upon these two recent decisions that the State places principal reliance for its argument that the taxes can be sustained as applied to L & N's transactions. We disagree.
The question before us is one of legislative intent. We presume that, in enacting the statute in 1935, the Legislature was aware of the existing interpretations and permissible limits of a state's power to tax. Wright v. Turner, 351 So.2d 1 (Ala. 1977); Coden Beach Marina, Inc. v. City of Bayou La Batre, 284 Ala. 718, 228 So.2d 468 (1969). Thus, we presume our Legislature knew that at the time the statute was passed, the rule in Blasius would have prevented the application of the tax to transactions similar to those at issue because they constitute a portion of interstate commerce. We also presume that the Legislature was aware of the fact that this tax could not be sustained as one "in lieu of" other taxes because the tax was expressly levied "[i]n addition to all other taxes." Code 1975, § 40-21-57. Similarly, we presume that the Legislature was apprised of the fact that it could not justify this tax as one upon "local activity," because to do so would require the indulgence in the proscribed conceptual segmentation of the integral parts of an interstate transaction. Finally, we presume that the Legislature is aware of the judicial enlargement of the State's permissible area and method of taxation, so that the Legislature could have taken full advantage of those changes if it either intended or desired to. Wright v. Turner, supra; Coden Beach Marina, Inc. v. City of Bayou La Batre, supra. No such changes have been made during the forty-five years since the statute was passed and the State *297 has not, by legislation, attempted to enlarge the scope of its taxation. Thus, viewed in its broadest scope, the statute in question could reach and impose a tax upon only those activities which were local and purely intrastate in character. We therefore conclude that the statute, as enacted in 1935 and as it exists today, was not intended to apply to receipts generated by transactions such as these which, although conducted wholly within the confines of Alabama, constitute an integral portion or segment of interstate commerce.
REVERSED AND REMANDED.
All the Justices concur.
NOTES
[1] These and other decisions have held that a tax upon commerce, either intrastate or interstate, is permissible if: (1) there is a substantial nexus between the activity and taxing state; (2) the tax is fairly apportioned; (3) the tax is nondiscriminatory; and (4) it is reasonably related to services and protection provided by the taxing state.
[2] These cases also placed reliance upon the fact that no cumulative burden was imposed upon the activity because no state other than the taxing state could tax the local activity.
[3] Overruled in Washington Rev. Dept. v. Stevedoring Assn., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978), discussed infra.
[4] Overruled in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), discussed infra.
[5] Complete Auto Transit's activities consisted of delivering automobiles which had been shipped into the state, from the railhead in the state to the retailers within the state. The Court did not expressly find that the activities constituted interstate commerce, but merely assumed, as did the lower court, that the activities were in fact interstate commerce. 430 U.S. 276, n. 4, 97 S.Ct. at 1077 n. 4.