(126 So. 133)

## DENSON v. ALABAMA POLYTECHNIC INSTITUTE. (5 Div. 41.)

Supreme Court of Alabama. Jan. 16, 1930.

Denson & Denson, of Opelika, for appellant.

Wm. J. Samford, of Opelika, for appellee.

GARDNER, J. The Alabama Polytechnic Institute instituted appropriate proceedings to condemn certain real estate owned by Dr. C. C. Thach at the time of his death, and by him devised to his widow for life, and at her death to his two married daughters. The will contains the further provision that upon the death of either of the daughters the property shall go in equal shares to the female children of the daughters and of his three named sons should they marry with their parents' consent.

Nellie Coit Curtis, a minor under 14 years of age, is testator's grandchild, the daughter of Elizabeth Lockhart Curtis named in the will. Through her duly appointed guardian ad litem, Nellie Coit Curtis, has resisted this condemnation proceeding, and prosecutes this appeal from the judgment rendered for petitioner in the court below.

It is insisted the judgment is erroneous for the reason that all parties in interest are not and cannot be represented resulting from the terms of the will creating contingent remaindermen in fee not yet in being. The insistence is without merit. Not only is the life tenant whose interest harmonizes with that of the contingent remaindermen present in the proceedings but such remaindermen are represented by one of their own immediate class in the person of the above-named minor Nellie Coit Curtis. This question is fully discussed in Elmore v. Galligher, 205 Ala. 230, 87 So. 349, and needs no further comment.

That a necessity exists for the acquisition of this property is established by the uncontroverted proof. It projects into the campus. The program of necessary building expansion authorized and now in course of construction must be abandoned, and the normal growth of the institution retarded, unless this property is acquired.

A question of more difficulty is presented in the argument that petitioner had not been granted the power of eminent domain. The grant of the power of eminent domain is one of the attributes of sovereignty, and does not pass by implication. 10 R. C. L. p. 196. Statutes conferring the right must be strictly construed. New & Old Decatur Belt, etc., R. R. Co. v. Karcher, 112 Ala. 676,

21 So. 825; S. S. S. & I. Co. v. O'Rear, 200 Ala. 291, 76 So. 57. Under this rule the language of section 522 of the "School Code of 1927" is of too broad a character to be construed as granting this specific power. Under like reasoning the provisions of section 7476, Code 1923, must be interpreted as relating to the mode of procedure and not the grant of the power. S. S. S. & I. Co. v. O'Rear, supra. The language of this section discloses that the lawmaking body clearly assumed as previously existing, the power of eminent domain in the Alabama Polytechnic Institute, but under the above rule of construction cannot be construed as a grant of such power. But this institute is a state institution, owned, controlled, and supported by the state, receiving also federal aid. Gen. Acts 1871–72, p. 84; Gen. Acts 1898–99, p. 22; Gen. Acts 1888–89, p. 1076; § 266 Const. of Ala. 1901. Such state institutions are a part of the state, and their property is in fact the property of the state. They are held to be immune from suits under the terms of our Constitution prohibiting suits against the state, though the charter may expressly provide otherwise. Cox v. Board of Trustees of the University of Alabama, 161 Ala. 639, 49 So. 814, and authorities therein cited.

In the above-noted case the statute of limitations applicable to the state was held to apply to a suit by the University trustees.

■ It is a well-recognized principle that the right of eminent domain is the offspring of political necessity, and is inseparable from sovereignty, unless denied to it by its fundamental law. "The right of eminent domain antedates constitutions, and is an incident of sovereignty, inherent in and belonging to every sovereign state." Steele v. County Commissioners, 83 Ala. 304, 3 So. 761, 762. See, also, Rudder v. Limestone County, post, p. 485, 125 So. 670, present term.

■ If therefore such institutions are so far an integral part of the state as to enjoy immunity from suits because of a constitutional prohibition against a suit against the state, we are of the opinion, by logical sequence, it must follow they also enjoy that other incident of sovereignty, the right of eminent domain, for the property to be acquired is to be in fact the property of the state and used for state purposes, the educational advancement of its citizens. The proceedings are in the name of the Alabama Polytechnic Institute, an agency of the state and a part thereof. While the proceedings are in the name of the Alabama Polytechnic Institute, yet in fact it is for and in behalf of the state through the state agency for the acquisition of property for use of the state in the welfare of its citizens. We think section 7476 of the Code of 1923 discloses a legislative recognition of this power of eminent domain as existing in petitioner and makes provision for its proper enforcement. The power comes from its inseparable connection with the state of which it forms a part. The power is therefore derived from the sovereign state, and needs no express statutory declaration to that end.

■ That this institution was created and is maintained by the state for educational advantages of the young men and women of Alabama and elsewhere is established without dispute, and is indeed common knowledge. It needs no discussion, therefore, to disclose that the acquisition of this property, shown to be necessary for the proper enlargement and expansion of the building program, is for a public purpose. Russell v. Trustees of Perdue University (Ind. Sup.) 168 N. E. 529.

It appears from the proof that the life tenant, the widow of Dr. Thach, after negotiations with the president of the institute and consultation with her son and son-in-law, agreed upon a valuation of the property, and the suggestion is made that thereby collusion is shown. The undisputed proof is to the effect that the sum so agreed upon (which was the amount fixed by the jury's verdict) was in fact in excess of the actual value of the property. The life tenant was as greatly interested in the question of valuation as any contingent remaindermen, and their interest was not adverse.

■ The word "collusion" is generally understood as indicating some fraud in the matter. Bouv. Law Dict. & Eng. (Rawles 3d Ed.). The agreement here shown bears no such indication, and in fact, from the evidence as to the value of the property, the remaindermen benefited thereby.

We have here considered the questions as presented in various forms in the record, and find no error. Let the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.