155 So. 872

STATE ex rel. RADCLIFF v. CITY OF MOBILE et al.

I Div. 834.

Supreme Court of Alabama.

June 22, 1934.

94

Harry Seale and S. P. Gaillard, Jr., both of Mobile, for appellees.

Pillans, Cowley & Gresham, of Mobile, for appellant.

KNIGHT, Justice.

This is a petition or bill by the state, on relation of R. H. Radcliff, and R. H. Radcliff, a taxpayer, to prohibit, enjoin, or restrain the city of Mobile, and the commissioners of said city, from erecting certain wharf improvements in said city, and from procuring from the Public Works Administration the necessary funds with which to make said improvements, and from the issuance of interest-bearing warrants of said city to evidence and secure the repayment of the loan, and for other purposes. We shall treat the bill or petition as one for injunctive relief, and not for prohibition, as such a writ only issues from

a superior court to an inferior jurisdiction to prohibit action by the inferior tribunal. The writ of prohibition is limited to coercion of courts, and not individuals. Southern Ry. Co. v. Birmingham, S. & N. O. Ry. Co., 131 Ala. 663, 29 So. 191.

It is made to appear from the petition filed in this cause, in the circuit court of Mobile county, that the city of Mobile, acting through its commissioners, proposes to secure a loan from the Federal Public Works Administration (or from such other public body as the money may be procurable from) a maximum sum of $2,600,000, or "so much thereof as the city may be able to persuade the Federal Public Works Administration to lend it." This money, when borrowed, to be used in the erection of certain "improvements to docks, wharves and piers on property now held, or about to be obtained, by the said city under a long-time leasehold interest from the State of Alabama, acting through its agency, the State Docks Commission, with the approval of the Governor of Alabama," the said property lying within the city of Mobile and within the area acquired by the state for the development, maintenance, and operation of its port and its port facilities; the improvements contemplated being the construction of a pier and a slip, and the construction upon such pier of a cold storage plant, banana handling plant, and a grain elevator, or any one or more of them that may be approved by said Public Works Administration.

It is further averred that the said city, unless prohibited and restrained by the court, proposes to borrow the money as aforesaid, and for the purposes set forth, and proposes "to issue its warrants evidencing the indebtedness to be incurred by securing the said loan, which warrants will be for interest only on the loan for three years, and after that time will be for the interest and also for amortizing principal payments; the last warrant for unpaid balance to be payable fifteen years after its date."

The petition avers that it is specifically provided in the application for said loan from the Federal Public Works Administration that such warrants shall not be a charge against the general fund of the city of Mobile, but that they shall be payable only out of the income derived from the operation of the facilities to be erected as the wharf, dock, and pier improvements, and which are "to be erected with the money to be borrowed."

That it is proposed by the city that the warrants, when issued, shall not be delivered to contractors or laborers performing the work of constructing the contemplated improvements, but will be delivered "directly to the authorized agency of the Federal Government," and that said warrants shall be secured by a mortgage "on the improvements placed upon the said leasehold interest of the city as set forth above."

It is made to appear from the petition that the state of Alabama, through the state docks commission, shall have and retain the power to fix the rates and charges to be made for the use of such facilities, and the power to supervise the management and operation of said facilities upon completion.

It is further made to appear from the petition that the city of Mobile has a population of more than 6,000 inhabitants, and is already indebted in an amount exceeding 7 per centum of the assessed valuation of the property therein, not including temporary loans made in anticipation of the collection of taxes and to be paid in one year; and not including bonds or other obligations for schoolhouses, waterworks and sewers; and not including obligations incurred for street or sidewalk improvements where cost thereof is assessed against abutting property.

The full terms of the leasehold agreement are not set out, nor is the contemplated application to the Public Works Administration set forth in terms, nor the form of the warrants, or the mortgage to be executed. We cannot, therefore, be as specific in dealing with the matter as we should like, but we will discuss the questions presented in such way as we think will meet the requirements of the case.

The city of Mobile, and the other respondents, commissioners of said city, in response to the rule nisi issued upon the filing of the petition against them, appeared in the circuit court of Mobile, and demurred to the petition, assigning many grounds, all to the effect that the petition failed to state "a cause of action," in that the city of Mobile, acting through its commissioners, was invested with the power to do the things which the petition averred it proposed to do.

On submission upon the demurrer, the court sustained the same, and, the petitioner declining to plead further, the court, on motion of respondents, entered a final judgment in favor of respondents, and dismissed the petition.

The appellants took the position in the court below, and they renew their contention here, that the city of Mobile has not the right to acquire the leasehold interest from the state, for that the state docks commission is without authority to execute such lease for

and on behalf of the state of Alabama; that the city has not the power to execute the proposed warrants in the manner, and for the purposes, set forth; and that the respondents are without authority to increase the indebtedness of the city of Mobile in the manner contemplated, and that respondents are without lawful authority to dispose of the said warrants in the manner contemplated..

In brief filed here, the appellants argue that there are two major and three minor questions litigated between the parties, and before this court on this appeal.

The major questions are thus stated by appellant:

"1. In the light of the facts hereinbefore stated, will the incurring, by the City of Mobile, of the contemplated indebtedness, with the obligation to repay limited in the fashion contemplated, constitute a becoming indebted by the City of Mobile in excess of the limit fixed by the Constitution of Alabama?

"2. Can the City of Mobile·issue lawfully, interest-bearing warrants of the character and in the fashion contemplated, as hereinbefore described?"

"Minor questions:

"3. Can the State of Alabama lawfully make and execute a lease to the City of Mobile for the purposes and in the general fashion hereinbefore described?

"4. Has the City of Mobile the power to take a leasehold interest from the State in the contemplated fashion, and erect thereon structures, equipment and facilities, for use on piers, wharves and docks?

"5. If the contemplated scheme be lawful and within the city's powers, and if the city may lawfully issue its warrants as contemplated; then may it deliver such warrants to the United States, or other lender, to evidence. indebtedness for the loan; or is the city confined, in its use of the warrants, to the delivery of them to contractors and laborers in payment for work done in erecting the said structures, facilities and improvements?"

It would seem that the first important question to be determined in this case is, Has the city of Mobile the charter power to construct and maintain the improvements and facilities contemplated? Confessedly, if it has not, it would be useless to further pursue the questions.

■ It may be stated broadly that municipal corporations have and can exercise only such powers as are expressly granted in their charters, and such as may be necessary and proper in order to carry such express or direct powers into effect; but these powers include those which are indispensably necessary to the declared objects and germane to the governmental purpose for which such corporations may be organized. City of Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118; City Council of City of Montgomery v. Plank-Road Co., 31 Ala. 76; City of Mobile v. Yuille, 3 Ala. 137, 36 Am. Dec. 441; 1 Dillon on Municipal Corporations, § 55; New York Firemen Ins. Co. v. Ely, 5 Conn. 560, 13 Am. Dec. 100; Colvin v. Ward et al., 189 Ala. 198, 66 So. 98; Spear v. Ward et al., 199 Ala. 105, 74 So. 27; New Decatur v. Berry, 90 Ala. 432, 7 So. 838, 24 Am. St. Rep. 827; Pearson v. Duncan, 198 Ala. 25, 73 So. 406, 3 A. L. R. 242.

■ It would follow naturally from the foregoing statement of the law that the agents, officers, or the city council of a municipal corporation are without authority to enter into any agreement, contract, or undertaking which is beyond the scope of the charter powers of such municipality, no matter what the objects may be, or how pressing the necessity, or what are the benefits, real or supposed, which may flow to the city, if such objects are not within the charter powers, the city and its authorities must refrain from usurping such powers. The remedy in such cases lies only with the lawmaking branch of the government. City of Eufaula v. McNab, supra.

■ It may also be stated as a sound principle of municipal law, abundantly supported by the authorities, that a municipal corporation may purchase and hold property for only such purposes as are authorized by its charter or an applicable statute. State v. Mansfield Commissioners, 23 N. J. Law, 510, 57 Am. Dec. 409; Gregg v. Mayor, etc., of Baltimore, 56 Md.. 256; McQuillin, Municipal Corporations (2d Ed.) vol. 3, § 1216, p. 1216.

■ The power, if in fact possessed by the city of Mobile, to undertake the construction of the improvements and facilities contemplated, is found in section 2018 of the Code. This section provides: "The council may provide public scales and an inspection of weights and measures, and may provide punishment for persons, firms and corporations using fraudulent weights and measures; may alter and change the channel of any water course in the police jurisdiction of the city or town; and may erect and maintain wharves, and erect buildings and other improvements upon wharves and lease them, in periods not exceeding ten years, or collect wharfage dues thereon; provide for lighting,

sprinkling, and cleaning the streets by contract or otherwise; establish, lay out and improve public grounds, parks and boulevards, regulate the same and may provide music and other exhibitions for the amusement of the inhabitants."

In 1 McQuillin on Municipal Corporations, § 9, p. 1017, it is stated by the author:

A wharf is defined as "space of ground artificially prepared for the reception of merchandise from a ship or vessel so as to promote the convenient loading and discharge of such vessel. It is an artificial landing place of no particular design, the only necessary arrangement being that there must be some artificial improvement, as distinguished from an unimproved natural landing place. A mere landing place is not converted into a wharf by so designating it in an ordinance; it must be improved for that purpose.

"In towns and cities on the sea or navigable lakes and rivers, ordinarily, the local corporation has power to construct or authorize the construction of safe harbors, landings, piers, wharves and docks. Reasons of public convenience and necessity may require the construction, maintenance and control of wharves by municipal corporations, but in the absence of express authority it is usually held that a municipal corporation cannot construct docks or wharves and exact a charge for their use. But the construction, maintenance and control of wharves within its limits is so closely connected with the prosperity of a municipal corporation and is so nearly allied to the power which it exercises over its streets that no question has ever been raised as to the right of the legislature to authorize a municipality to own and maintain them. The property for the wharf may be secured by grant, purchase or by condemnation proceedings and the fund for its construction and maintenance may be obtained by taxation."

It would seem, therefore, that the city of Mobile under the provisions of section 2018, Code, has express legislative authority to make the improvements and facilities contemplated, if it can secure from the state a leasehold interest in the land.

■■ Can the docks commission, with the approval of the Governor, under the statute creating it, enter into the proposed lease with the city of Mobile?

"Amendment No. 12 of the Constitution of Alabama authorizes the state 'at a cost of not exceeding ten million dollars (to) engage in the work of internal improvement, or promoting (etc.), and operating all harbors and sea-ports within the state (etc.), provided, that such work or improvement shall always be and remain under the management and control of the state, through its State Harbor Commission, or other governing agency.'" State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581.

By section 7 of an act of the Legislature approved January 17, 1927 (Gen. Acts 1927, pp. 1, 6), entitled an act to give effect to the amendment of section 93 of the Constitution, etc., it is provided, inter alia: "The title to all property acquired under the authority of this Act shall vest in the State of Alabama, but the Commission, with the consent and approval of the Governor, may dispose of, sell or lease to others, at reasonable prices and for reasonable compensation, any of said property, equipment and facilities; provided that the proceeds of all such sales shall be returned to capital account. The proceeds from all leases shall become a part of the operating fund."

It will be noted that "it is set forth in the leasehold agreement, under which the City of Mobile acquired or intends to acquire, the property on which said proposed facilities and improvements are to be built, that the State of Alabama, through the State Docks Commission, retains the power to fix the rates and charges to be made for the use of such facilities, and the power to supervise the management and operation of said facilities upon completion."

We can perceive no good reason in law why either the city or the state docks commission may not lawfully enter into the agreement contemplated, since, so far as the state docks commission is concerned, the authority to do the act is expressly conferred by statute upon it, when acting with the consent and approval of the Governor, and it would also seem that the power to erect and maintain wharves and erect buildings and other improvements upon such wharves, etc., carries with it the power to acquire the necessary property for the wharves by grant, purchase, or by condemnation proceedings. Code, § 2018; McQuillin on Municipal Corporations, vol. 1, § 409, p. 1018; Ft. Payne Co. v. City of Ft. Payne, 216 Ala. 679, 114 So. 63.

■ Inasmuch, however, as it appears from the petition in this cause, and which fact is admitted by the appellees, that the city has already reached its debt limit, it is only proper here to say that, in the acquisition of said leasehold interest in said property, the city cannot make the lease price a charge against

the general revenue of the city, unless the same can be paid from current funds.

The city of Mobile has a population of more than 6,000, is already indebted in an amount exceeding 7 per centum of the assessed valuation of the property therein, not including temporary loans made in anticipation of the collection of taxes and to be paid in one year, and not including bonds or other obligations for schoolhouses, waterworks and sewers, and not including obligations incurred for street or sidewalk improvements, where cost is assessed against abutting property.

It is fully recognized by the appellees, the city of Mobile and the commissioners of said city, that, if the tentative or contemplated arrangement to secure funds from the Public Works Administration will, if consummated, serve to increase the present indebtedness of the city, and create in any way a charge or an additional burden upon the general fund of the city of Mobile, then, and in that event, the undertaking must fail, as the city is already beyond her constitutional debt limit.

The petition of the taxpayer avers that the city proposes to issue its warrants in evidence of the loan from the Public Works Administration, to be secured by a mortgage solely on the property to be constructed with funds acquired from Public Works Administration; and it is also averred that in the application for the loan it is specifically provided: "That such warrants shall not be a charge against the general fund of the City of Mobile, but that they shall be payable only out of the income derived from the operation of the facilities to be erected as the wharf, dock and pier improvements, to be erected with the money to be borrowed."

There is no averment as to whether the same provision will appear in the warrant. But it must be borne in mind that there is a marked distinction between a "warrant" and a bond. "Warrants are general orders payable when funds are found, and there is propriety in the rule providing that they shall be paid in the order of presentation, the time of presentation to be indorsed by the treasurer on the warrants." Shelley v. St. Charles County Court (C. C.) 21 F. 699, 701.

It would appear, therefore, from the petition or bill, that, if the money is secured from Public Works Administration, as contemplated, and under the conditions stated,

the warrants will not constitute a pecuniary liability upon the city of Mobile, or a charge against its general credit, within the meaning of section 225 of the Constitution. Oppenheim v. City of Florence et al., ante, p. 50, 155 So. 859; Bankhead v. Town of Sulligent, ante, p. 45, 155 So. 869; and Smith v. Town of Guin, ante, p. 61, 155 So. 865.

Nor are such warrants to be treated or regarded, in any sense, as bonds of the city of Mobile within the meaning of section 222 of the Constitution. The city, under the averred facts in this case, would have the authority to issue same without an election. Littlejohn v. Littlejohn, County Treasurer, 195 Ala. 614, 71 So. 448; Talley et al. v. Commissioners' Court, 175 Ala. 644, 39 So. 167; Matkin v. Marengo County et al., 137 Ala. 155, 34 So. 171; Gen. Acts 1932 (Ex. Sess.) p. 203.

We have considered all questions presented deemed of merit, and are at the conclusion that the decree of the circuit court should be, and is here, affirmed.

Affirmed.

All the Justices concur.