228 So.2d 468

**CODEN BEACH MARINA, INC., a Corp., et al.,**

v.

**CITY OF BAYOU LA BATRE, a Municipal Corp.**

I Div. 413.

Supreme Court of Alabama.

Nov. 20, 1969.

Samuel L. Stockman, Mobile, for appellants.

Vincent F. Kilborn, Mobile, Richard C. Lacey, Fairhope, of counsel, for appellee.

**COLEMAN, Justice.**

The landowners appeal from a judgment of the circuit court granting an application by the City of Bayou La Batre, a municipal corporation, to acquire by condemnation certain land located within the police jurisdiction but outside the corporate limits of the city.

The city filed its original petition in the probate court. The owners filed demurrer and pleas objecting to the condemnation of their land. After hearing, the probate court granted the application and appointed commissioners who assessed the damages to which the owners were entitled at two thousand dollars. An order of condemnation was entered accordingly and the owners appealed to the circuit court.

The city's amended application states the purposes for which the city seeks to take the land as follows: To develop the harbor; to serve as a breakwater; for development of the area adjacent to certain State Dock areas; for construction of wharves, harbors, docks, landings, and building thereon; and for leasing all or parts thereof to others, including the Department of State Docks, or to private enterprise for public or private use. The city seeks to acquire fee simple title.[1]

The owners demurred to the city's amended application raising the point that the land sought to be condemned lies outside the corporate limits of the city. The court overruled the owners' demurrer.

The owners filed pleas which also raise the issue that the land to be taken lies outside the corporate limits of the city and that the city has no lawful power to condemn land so located for the purposes set out in the application to condemn.

After a hearing, the court ordered that the land be condemned for the uses and purposes stated in the city's application. At a subsequent hearing, a jury assessed the damages at $20,500.00 and an order of condemnation was entered accordingly. The owners appeal to this court. Inadequacy of the amount of the award is not argued as error.

The owners do say that the trial court erred in overruling their demurrer and in

---

1. The application recites:
   "Immediately north of the parcel of tract of land hereafter described the Department of State Docks and Terminals of the State of Alabama is presently engaged in constructing for its own purpose public commercial dock and terminal facilities and a docking or turning basin in which ships and boats may be moored and docked. To further facilitate that construction and take advantage of the water resource thus made more fully available to the City, the City of Bayou La Batre has determined to acquire and has determined it necessary and expedient to acquire, the lands described in Exhibit A hereto, such lands being within the police jurisdiction of the City. The uses and purposes for which the petitioner seeks to acquire such lands is for the promoting, developing and maintaining of the harbor and basin just above referred to, to serve and act as a breakwater against storms in protecting the facilities presently being constructed by the Department of State Docks and Terminals and for the development of the area adjacent to such state dock areas as water resources of the City by the acquisition of the lands described in Exhibit A for construction of wharves and for wharf sites and sites for the construction of harbors, docks, ports and landings and for construction of buildings and improvements on and near wharves and wharf sites and for leasing of all or parts thereof to others including, but not limited to, leasing of all or parts thereof to the Department of State Docks and Terminals or to private enterprise for public or private use for periods of time authorized by law. For such purposes the City seeks to acquire the lands described in Exhibit A attached and seeks in connection therewith to acquire the fee simple title."

ordering that the land be condemned. The owners assert that the court erred in so ruling because the city does not have the right to condemn land outside the city limits for the stated purposes. The owners also assert that the court erred in so ruling for other reasons, but, if the city does not have the right to condemn lands outside the city for the stated purposes, consideration of the other reasons is unnecessary.

The owners assign for error other rulings of the trial court, but, if the city has not the power to condemn, consideration of the other assignments of error is also unnecessary.

"It is well settled by the decisions of this and practically all of the courts that statutes conferring the right of eminent domain must be strictly construed in favor of the land owner. Ensign Yellow Pine Co. v. Hohenberg, 200 Ala. 149, 75 So. 897; Sloss-Sheffield Steel & Iron Co. v. O'Rear et al., 200 Ala. 291, 76 So. 57; Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 126 So. 133." J. Blach & Sons v. Hawkins, 238 Ala. 172, 175, 189 So. 726, 728.

"A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. Denson v. Alabama P. I., 220 Ala. 433, 126 So. 133; 10 R.C.L. page 196, section 168, and cases cited.

"A municipal corporation has no inherent power of eminent domain, and can exercise it only when expressly authorized by the legislature, and statutes conferring the right must be strictly construed in favor of the landowner. New & Old Decatur Belt, etc., R. R. Co. v. Karcher, 112 Ala. 676, 21 So. 825; Sloss-Sheffield S. & I. Co. v. O'Rear, 200 Ala. 291, 76 So. 57; Denson v. Alabama P. I., supra; 10 R.C.L. page 197." City of Birmingham v. Brown, 241 Ala. 203, 207, 2 So.2d 305, 308.

To show its authority to condemn land outside its corporate limits for wharves, docks, etc., the city relies on the statutes next discussed.

1.

■ Act No. 300; 1961 Acts, Vol. II, page 2361; 1958 Recompilation of Code, Pocket Parts, Title 37, § 471(3); is entitled:

"AN ACT

"Relating to the powers of municipalities; authorizing the use of municipal funds and revenues to promote economic development." [2]

We are inclined to doubt that the legislature, by using the word "promote" in the title of Act No. 300, intended to authorize cities to acquire lands and build wharves and docks on such land. In Webster's New International Dictionary, 1926, page 1716, appears a definition of promote as meaning:

"1. To contribute to the growth, enlargement, or prosperity of (something

**2.** The body of Act No. 300 recites:
    "Section 1. In addition to all other powers which may be conferred on it by law, every incorporated city or town shall have the power to set aside, appropriate and use municipal funds or revenues for the purpose of developing, advertising and promoting the agricultural, mineral, timber, water, labor, and all

other resources of every kind within its police jurisdiction, and for the purpose of locating and promoting agricultural, industrial, and manufacturing plants, factories, and other industries within the municipality, or elsewhere inside the county not more than 15 miles from the boundaries of the municipality."

in course); to forward; further; encourage; advance; as to *promote* learning, disorder, a business venture."

The quoted definition would appear to be what the legislature had in mind rather than another definition found in Webster's Third New International Dictionary, 1961, page 1815, as follows:

"5. *slang:* to get possession of by doubtful means or by ingenuity (see what he could promote by a little personal string pulling—J. G. Cozzens) [able to promote a bottle of wine—R. M. Ingersoll]"

In no definition have we found the word "promote" defined as meaning to acquire anything by the power of eminent domain, and we have found nothing to suggest that to "promote" means to take land outside the corporate limits by condemnation. Surely, the intention to confer such power to condemn is not "clearly expressed" in the title or the body of Act No. 300. Constitution of 1901, Section 45. This statute does not support the city's contention.

### 2.

Act No. 820; 1961 Acts, Vol. II, page 1206; 1958 Recompilation of Code, Pocket Parts, Title 37, § 470; is entitled:

"AN ACT

"To amend Section 470 of Title 37 of the Code of Alabama of 1940 so as to clarify the provisions of the said section with respect to the powers of municipalities to own, construct, maintain and lease buildings and other improvements on and near wharves and wharf sites and so as to change the period of time for which leases may be made under said section." [3]

Nowhere in Act No. 820 is mention made of the grant to a city of the power to condemn land. The city argues that § 2018, Code 1923, is now § 470, Title 37, and that, in State ex rel. Radcliff v. City of Mobile, 229 Ala. 93, 155 So. 872, this court held that § 2018 authorizes cities to condemn lands for wharves both inside and outside the corporate limits. The argument rests on the statement in paragraph [7, 8] of the opinion as follows:

". . . . it would also seem that the power to erect and maintain wharves and erect buildings and other improvements upon such wharves, etc., carries with it the power to acquire the necessary property for the wharves by grant, purchase, or by condemnation proceedings. Code, § 2018; (Citations Omitted) " (229 Ala. at 97, 155 So. at 876)

3. The body of Act No. 820 recites:
" 'Section 470. *Miscellaneous powers of municipalities.* The council or other governing body of any town or city may provide public scales and an inspection of weights and measures, and may provide punishment for persons, firms and corporations using fraudulent weights and measures; may alter and change the channel of any water course in the police jurisdiction of the city or town; and may construct and maintain wharves and construct buildings and other improvements on and near wharves and wharf sites and may collect wharfage dues and other charges thereon and rentals with respect thereto; may lease to others all or any part of wharves or sites for wharves constructed, maintained or owned by such town or city and any buildings and other improvement so constructed on or near any wharf or wharf site, for public or private use, for a period or periods not exceeding forty years from the completion of such construction or for a period or periods not exceeding forty years from the delivery of the lease if such construction shall have been completed before the date of delivery of the lease, and may authorize the lessees in such leases and their sublessees to construct or maintain buildings and other improvements upon the properties so leased and collect wharfage due thereon and to sublet all or any part of said wharves, buildings and other improvements; and may provide for lighting, sprinkling, and cleaning the streets by contract or otherwise; and may establish, lay out and improve public grounds, parks and boulevards and regulate the same, and may provide music and other exhibitions for the amusement of the inhabitants.' "

The same argument was made in *Brown* and answered by this court as follows:

" . . . . The case of State ex rel. Radcliff v. City of Mobile, 229 Ala. 93, 155 So. 872, 875, appears to have been dealing only with the right to condemn for wharves 'within its [city] limits.' " (241 Ala. at 208, 2 So.2d at 309)

" . . . . Unless a contrary intent appears, the re-enactment of a statute which has been judicially construed, is an adoption of the construction. (Citation Omitted)" Ex parte State ex rel. Lawson, 237 Ala. 591, 593, 188 So. 242, 244.

█ In Act No. 820, there is expressed no intent contrary to the above quoted construction declared in *Brown.* We must presume that when the legislature amended § 470 in 1961, the legislature was aware of the construction placed on § 470 by this court in *Brown,* and that, although the lawmakers had knowledge of such construction, they did not, in clarifying the provisions of § 470, see fit to grant the power to condemn lands outside the city limits but left the grant of power to condemn limited to land within the city limits, as this court had declared that power to be.

In J. Blach & Sons v. Hawkins, supra, this court considered the power granted to a city by Act No. 107, General and Local Acts 1933, page 100, which recites in Section 1, to wit:

" . . . . Such city or county may acquire necessary or convenient rights of way within the city and without the city . . . . in order to reach any necessary or accessible source of power at a U. S. Government owned Power Dam, or otherwise."

With respect to the power to condemn granted by Act No. 107, this court said:

"It is sufficient to say that the body of this act does not authorize the condemnation of a right of way outside of the municipality. It merely gives the

right to acquire which may be by purchase or gift and is not equivalent to the right to condemn. Claremont Ry. & Lighting Co. v. Putney, 73 N.H. 431, 62 A. 727; Cavanagh v. City of Boston, 139 Mass. 426, 1 N.E. 834, 52 Am.Rep. 716; Paris Mountain Water Co. v. City of Greenville, 105 S.C. 180, 89 S.E. 669." (238 Ala. at 174, 189 So. at 727)

In *Brown,* this court again said:

" . . . . The right to acquire, which may be by purchase or gift, and we may add, the right to own, is not equivalent to the right to condemn. (Citations Omitted)" (241 Ala. at 207, 2 So.2d at 308)

█ § 470, as amended by Act No. 820, does not grant power to condemn land outside the city for constructing wharves, docks, or buildings thereon.

*3, 4, and 5.*

█ § 341, Title 37, contains definitions of the terms used in Subdivision 4, Article 2, Chapter 6, Title 37. Chapter 6 relates to municipal bonds.

§ 342, Title 37, sets out certain powers of municipalities with respect to issuing revenue bonds. It was amended by Act No. 880, 1961 Acts, Vol. II, page 1383. The city says that a certain part of § 342, when construed together with § 507, Title 37, gives to the city the right to condemn land outside the city for wharves, etc.

That part of amended § 342 on which the city relies recites as follows:

"In addition to the powers which it may now have, any municipality shall have power under this subdivision: To acquire by gift or purchase, to construct, to reconstruct, to improve, to better or to extend any undertaking, within or without the municipality or partially within or partially without the municipality; to operate and maintain any undertaking

for its own use and for the use of public and private consumers and users within and without the territorial boundaries of the municipality; to lease any undertaking or portion thereof to any agency or department of the state of Alabama for a period or periods not exceeding forty years from the completion of the construction of the work, . . . . "

The city appears to recognize that the quoted language contains no grant of authority to condemn, but the city says the grant of authority to condemn is found in § 507.[4] This is the same argument made in *Brown* with respect to Section 2295, Code 1923, and Section 2046, Code 1923. In *Brown*, this court decided that neither section of the Code, nor both, granted power to condemn land outside the city. We make the same decision with respect to § 342 and and § 507. We will not repeat all that was said in *Brown*, but do repeat the following which was said with respect to Section 2295, Code 1923, which is now § 507, to wit:

"Clearly no grant, either expressed or implied, to condemn lands outside the corporate limits of the city for public park purposes is found in this section. . . . .

"Equally clear, section 2046, Code of 1923, is but a grant of police jurisdiction over certain enumerated properties belonging to a city and located without its corporate limits. This section alone, or when construed in pari materia with section 2295, supra, does not expressly, nor by necessary implication, grant to the city the right to condemn lands outside the corporate limits for public park purposes. . . . . " (241 Ala. at 207, 208, 2 So.2d at 309)

In *Brown*, this court considered the condemnor's further insistence that Section 15 of an act found in General Acts 1915, 294, 298, granted power to condemn land outside the city. The 1915 statute is quoted in *Brown* and closely resembles § 507, Title 37. It provided that "such cities" have power ". . . . to condemn for any municipal or public purpose any land or interest therein by the exercise of the right of eminent domain in the manner . . . . provided by the general laws . . . . " This court said:

"Our construction of section 15 of the Acts of 1915, page 298, is that it confers no greater right than that given to municipalities generally, by section 2295, Code of 1923, that is to say, the right to condemn lands within the corporate limits of the municipality." (241 Ala. at 208, 2 So.2d at 309)

Giving § 507 the widest possible effect, it grants power to condemn land within the city limits. The better construction probably is that it prescribes procedure rather than grants power, for it recites that ". . . . the . . . . city shall have full power . . . . to acquire by purchase the necessary lands . . . . or *for the purposes for which private property may be acquired by condemnation*, may proceed to condemn the same in the manner provided by this chapter, or by the general laws . . . . " (Emphasis Supplied)

4. § 507, Title 37, recites:
"Whenever in the judgment of the council of a city or town, it may be necessary or expedient for the carrying out and full exercise of any power granted by this title, the said town or city shall have full power and authority to acquire by purchase the necessary lands, or rights, easements, or interests therein, thereunder, or thereover, or for the purposes for which private property may be acquired by condemnation, may proceed to condemn the same in the manner provided by this chapter, or by the general laws of this state, governing the taking of lands or the acquiring of interests therein for the uses for which private property may be taken, and such proceedings shall be governed in every respect by the general laws of this state pertaining thereto, or by the provisions on the subject contained in this chapter, when the same are followed."

It appears that § 507, Title 37, originated in Act No. 797, approved August 13, 1907; General Acts 1907, 790, 872. § 507 appears in the 1940 Code virtually unchanged from its original form as Section 165 of Act No. 797, which was an act to provide for the organization and incorporation of cities and towns and to define their powers. As we are advised, when Act No. 797 was approved in August, 1907, the Code of 1896 was still in effect and contained no general section relating to the power of cities to condemn land or providing procedure for condemnation.

What is now § 1, Title 19, Code 1940, appears to have been Section 1712 of the Code of 1896. Section 1712, Code 1896, provided that "Any corporation" may apply to the court of probate for an order of condemnation, but contained no reference to a "municipality" as does § 1, Title 19, Code 1940.

Referring to Section 7476, Code 1923, now § 1, Title 19, this court said:

" . . . . Under like reasoning the provisions of section 7476, Code 1923, must be interpreted as relating to the mode of procedure and not the grant of the power. . . . . " Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 435, 126 So. 133, 134.

Section 165 of Act No. 797 appears to have been enacted to provide a method by which cities could exercise the power to condemn. It could hardly have been intended to be a general grant of power to condemn land outside a city because in the following Section 166 of the same act, it is provided that whenever " . . . . a right of way through the lands of others (whether in or out of the city or town) is necessary for obtaining a water supply . . . . ," the council shall authorize the mayor to attempt to purchase, and in case of failure, "to acquire the same by condemnation." If Section 165 be a general grant of power to condemn land outside the city, Section 166 was unnecessary.

Section 165 of Act No. 1712 was incorporated in the Code of 1907 as Section 1439. Governor Comer, in compliance with statute, fixed the first day of May, 1908, as the day on which the Code of 1907 should go into effect.

We adhere to the holding in *Brown* that § 507, Title 37, whether considered alone or in conjunction with other statutes, grants no power to condemn land outside the city.

6.

█ § 475, Title 37, appears in the Code of 1940 without material change from its original form as Act No. 141, General Acts of 1919, page 123. § 475 recites:

"All municipal corporations which may have heretofore regularly issued bonds as provided by law for all or any of the purposes of constructing a wharf or wharves and a landing or landings, and purchasing such real estate as may be necessary for such wharf or wharves and landing or landings, and the equipping and furnishing of the same, and improving of the water-front for such municipalities, may expend the proceeds of the sale of such bonds for all or any of the purposes of constructing a wharf or wharves and a landing or landings, and acquiring such real estate as may be necessary for such wharf or wharves, landing or landings, either by purchase of (sic) condemnation proceedings in the manner provided by Title 19, and of the equipping and furnishing of the same and improving of the water-front for such municipality, outside of its limits, as well as within its limits, and within five miles of the corporate limits of such municipality as such limits are now or may hereafter be established, and for the purpose of securing the complete use and enjoyment of all of said improvements for such municipality whether located within or without its limits."

The statute provides that municipal corporations "which may have heretofore reg-

ularly issued bonds as provided by law for" the stated purposes, may expend the proceeds to construct wharves and equip the same, and for acquiring the necessary real estate "either by purchase of (sic) condemnation proceedings," outside of its limits, as well as within its limits, and within five miles of the corporate limits. The word, "of", [followed by (sic)] in the 1958 Recompiled Code, appears as the word "or" in the original act.

The record does not indicate that the city relied on § 475, Title 37, at the trial. At page 208 the record recites:

"MR. STOCKMAN: I'll stipulate that there was no bond issue in accordance with Section 475, Title 38, Code of Alabama of 1940.

"MR. KILBORN: I thought I made it quite clear, we're not relying on that section as authority (unintelligible—Messrs. Kilborn, Lacey and Stockman talking at once). He and I may be able to agree on that in view of Mr. Aust's testimony."

It is not certain that the city relies on § 475 now, but that code section is cited in the brief for the city.

§ 475 is referred to in *Brown* as an illustration of an express grant to a city of power to condemn land outside the city. In *Brown*, however, there was no question of condemning land for construction of a wharf or wharves. *Brown* is not authority

that, under § 475, a city has power to condemn land outside a city for constructing anything if the city has not complied with the specific condition that the city shall "have heretofore issued bonds." In the instant case, as we understand it, compliance with that condition was not alleged in the application to condemn, and the City of Bayou La Batre has not issued such bonds.

The legislature, in clear language, requires that the bonds be issued as a condition to exercise of the power described. This court has no power or authority to strike out the language which the legislature placed in the statute. The city can derive no authority from § 475 to condemn land in the instant case.

The conclusion must be that the city has not shown a grant to the city of the power to condemn the land here sought to be condemned for the stated purposes. The court erred in overruling the demurrer to the petition to condemn and in rendering the judgment of condemnation.

The judgment is reversed and the cause remanded with directions to enter a judgment dismissing the proceeding. Sloss-Sheffield Steel & Iron Co. v. O'Rear, 200 Ala. 291, 76 So. 57.

Reversed and remanded with directions.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH, and McCALL, JJ., concur.