351 So.2d 1 (1977)
Dr. Leslie S. WRIGHT et al.
v.
Edward P. TURNER et al.
Dr. Leslie S. WRIGHT et al.
v.
Charles M. HOHENBERG et al.
Dr. Leslie S. WRIGHT et al.
v.
James J. CARTER et al.
SC 2564-SC 2566.
Supreme Court of Alabama.
September 23, 1977.
As Corrected On Denial of Rehearing November 4, 1977.
William J. Baxley, Atty. Gen., and William T. Stephens and Winston T. Lett, Asst. Attys. Gen., State of Alabama, for appellants.
William H. Morrow, Jr. and Truman Hobbs, Montgomery, for appellees.
BLOODWORTH, Justice.
By these three consolidated appeals, Act No. 130, the State Ethics Act (Acts of Legislature, Regular Session 1975, Vol. 1, page 604) which amended and re-enacted the former Ethics Act (Act No. 1056, Regular Session *2 1973, Vol. III, page 1699) is being challenged again. For the history of these two acts, see Mr. Justice Beatty's opinion for the Court in Comer v. City of Mobile, 337 So.2d 742 (Ala.1976), in which we disposed of the several constitutional challenges there presented to Act No. 130.
Two principal issues are raised by these appeals. First, are members of the Board of Bar Commissioners of the Alabama State Bar, members of the Judicial Compensation Commission, and members of the Court of the Judiciary "public officials" within the meaning of that term in the State Ethics Act and thus subject to the Act? Second, would application of the Ethics Act to these parties violate the "separation of powers" doctrine of the Alabama Constitution?
We answer the first question in the negative and therefore need not reach the constitutional issue. Moreover, we do not consider the constitutional validity of a statute unless essential to a disposition of the cause. Rainey v. Ford Motor Credit Co., 294 Ala. 139, 313 So.2d 179 (1975); City of Mobile v. Gulf Dev. Co., 277 Ala. 431, 171 So.2d 247 (1965).
These cases commenced on May 19, 1974, when appellees Edward Turner, et al., Charles M. Hohenberg, et al., and James J. Carter, et al., who are members of the Board of Bar Commissioners of the Alabama State Bar Association, the Judicial Compensation Commission, and the Court of Judiciary, respectively, instituted these actions against appellants, members of the Alabama State Ethics Commission and the Attorney General of Alabama, seeking to restrain them from applying and enforcing the provisions of the 1973 Ethics Act to them in their capacity as members of these entities. On May 15, 1974, Circuit Judge Eugene Carter entered a temporary restraining order; on May 21, 1974, he entered a preliminary injunction.
Appellants thereafter filed answers to appellees' complaints denying the substantive allegations of the complaints and incorporating motions to dismiss them.
By agreement of counsel for all parties, further proceedings were suspended pending final determination of the constitutionality of the 1973 Ethics Act. On November 19, 1974, Judge Carter upheld the constitutionality of the Act.
On August 7, 1975, the Alabama Legislature passed an amended and re-enacted Ethics Act over the Governor's veto. This 1975 amended version withstood a challenge to its constitutionality by the City of Mobile and certain individuals in Comer v. City of Mobile, supra, although two of its provisions were held to be unconstitutional.
Subsequently, at a pre-trial hearing of these cases, appellees filed an amendment to their complaints advancing the same challenges to the 1975 Ethics Act as they had made to the 1973 version. Appellees further averred that appellants' attempt to apply the provisions of the 1975 Ethics Act to them violated the "separation of powers" clauses of the Alabama Constitution of 1901, contained in sections 42, 43, and 139 et seq.
On May 4, 1977, Circuit Judge William Thetford, to whom the case had been reassigned upon the retirement of Judge Carter, entered a permanent injunction, enjoining appellants from taking any action to apply any of the provisions against appellees or their successors in office solely by reason of their service as members of these entities.
We now proceed to consider whether appellees are "public officials" within the meaning of that term in the Act.
Section 2(k) of the Ethics Act defines "public official" as follows:
"(k) `Public Official' means any elected official at the state, county, or municipal level of government and any person appointed under state, county, or municipal law to an office where in the conduct of such office such person has administrative and discretionary authority for the receipt or expenditure of public funds. This definition shall also include members of state boards, commissions, committees, councils and authorities, however selected, Presidents, Vice-Presidents, Chief *3 Purchasing Officials and Chief Financial Officials of all schools, colleges and universities of the State; members of city and county industrial boards, planning and zoning boards, school boards, boards of adjustment, utility boards, housing boards, public hospital boards, and any boards, commissions, committees, authorities or councils having jurisdiction with respect thereto, in all cities whose population is more than 15,000 according to the last decennial census.[1] This definition excludes members of all other boards not named including but not limited to those commissions, committees, councils, boards or authorities, functioning solely for cultural or historical purposes and advisory board members and members of boards of trustees of institutions of higher learning of the State of Alabama."
In interpreting the provisions of a statute, we must ascertain and effectuate the intent of the legislature. Tillman v. Sibbles, 341 So.2d 686 (Ala.1977); State ex rel. City of Birmingham v. City of Tarrant City, 294 Ala. 304, 315 So.2d 583 (1975).
In ascertaining legislative intent, we are entitled to consider conditions which may arise under the provisions of statutes and to examine the results which will flow from giving the language in question a particular meaning over another. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974).
At the outset, we should say that the express provisions of § 2(k) of the Ethics Act leave this matter in some doubt. Nowhere does the statute explicitly refer to the Board of Bar Commissioners of the Alabama State Bar, the Judicial Compensation Commission, or the Court of Judiciary. Appellants earnestly contend that the following language clearly demonstrates that appellees are covered by the Ethics Act: "This definition (public officials) shall also include members of state boards, commissions, committees, councils and authorities, however selected . . .." Appellees just as vigorously contend that the above-quoted language is not dispositive of the issue, and insist that the following language demonstrates that they are not covered by the act: "This definition excludes members of all other boards not named including, but not limited to those commissions, committees, councils, boards or authorities, functioning solely for cultural or historical purposes and advisory board members . .."
Upon close examination, we think it clear that none of the appellees are covered by the Ethics Act, and, therefore, that none need comply with it.
Under the statutory definition, these appellees are not "elected officials." Nor are they "appointed [officials who] in the conduct of such office . . . [have] administrative and discretionary authority for the receipt or expenditure of public funds," with, perhaps, the possible exception of the Bar Commissioners.
The plainest case is that of the Judicial Compensation Commission. Although it is a constitutionally mandated body and is required to "recommend to the legislature the salary and expense allowances to be paid from the state treasury for all judges of this state except for municipal and probate judges," its members are expressly excluded from the definition of "public officials" found in the Ethics Act.
This is equally true for the Court of Judiciary. Its five members' primary function is to hear complaints filed against judges by the Judicial Inquiry Commission. Since its creation four years ago, it has convened for no more than a few times each year. Its members serve without pay in a position which may be charitably characterized as "thankless." Plainly, we think, the members of the Court of Judiciary are not "public officials."
Likewise, it seems clear to us that the members of the Board of Bar Commissioners of the Alabama State Bar Association are not "public officials" either.
*4 It might be argued that because the Bar Commissioners receive and expend public funds through their discretionary budgeting of receipts from lawyers' licenses, they fall within the second part of the definition. Tit. 46, § 32, Code of Alabama 1940 (Recompiled 1958). But, we think not for the reasons which hereafter appear.
The members of the Board of Bar Commissioners act on matters relating exclusively to their professional association of attorneys. They serve without pay. They are required to meet once each year, although in practice, they usually meet five or six times annually. Their significant duties, with respect to disbarment and reinstatement, are subject to Supreme Court review. Clearly, they should not be characterized as "public officials" in any common sense or legal definition of the term.
Historic definitions as to the meaning of the term "public officers" are not particularly helpful to us in a resolution of the question as to whether members of the Board of Bar Commissioners are, or are not, "public officials" within the meaning of that term in the Ethics Act. Nevertheless, we proceed to examine those definitions found in our case law.
In State v. Baumhauer, 244 Ala. 1, 7, 12 So.2d 326, 330 (1942), the following appears: "[I]n Harrington v. State, 200 Ala. 480, 76 So. 422, 423, it is pointed out that `when we speak of a public officer as a state, county, or municipal officer, we usually mean a person who, by lawful authority, has been invested with a part of the sovereign functions of government.'"
In State v. Stone, 240 Ala. 677, 680, 200 So. 756, 758 (1941), we find the following: "It seems to be well settled that one who performs a public function, and his authority is derived directly from the state by legislative enactment, and the law prescribes his duties, powers, and authority, such an one is a public officer of the state."
In Hard v. State, 228 Ala. 241, 153 So. 725, 726, the above quoted language from State v. Stone appears. The opinion also quotes from United States v. Hartwell, 6 Wall. (73 U.S.) 385, 393 18 L.Ed. 830: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties."
Members of the Board of Bar Commissioners do have some functions which derive directly from legislative enactments. See Tit. 46, § 25, Code of Alabama 1940. It is clear, however, from the terms of the Code, that their duties are, for the most part, dependent upon Supreme Court approval.
This dependency was underscored in the opinion authored for the Court by Justice Shores in Board of Commissioners, Alabama State Bar v. State ex rel. Baxley, 295 Ala. 100, 109, 324 So.2d 256, 262 (1975): "Although the Board (of Bar Commissioners) was created by the legislature, it was created as an arm to this court and any action by the Board is subject to review or approval by this court. The legislature has not created an entity which is not subject to control or regulation, the Board is subject to the control of this court."
Moreover, the members of the Board receive neither emolument nor salary by virtue of their membership on the Board, although they do receive reimbursement for actual expenses.
There are two more reasons we may give for the result we reach in these cases.
The first reason emanates from the long-standing maxim of statutory construction that a reviewing court is bound to presume that the legislature, when amending a statute, was aware of the judicial construction placed upon it and that, absent indications of intent to the contrary, the legislature did not see fit to change such judicial construction in the course of the amendment. Coden Beach Marina, Inc. v. City of Bayou La Batre, 284 Ala. 718, 228 So.2d 468 (1969).
The first Ethics Act, passed in 1973, did not use the term "public official" nor did the definition of that term correspond with any term we find in the 1973 Ethics Act, except for the following. The 1973 Act employed the term "state official" and defined it thusly:

*5 "(k) `State Official' means any elected official of the legislative, judicial, or executive branch of state government, and any person appointed under Alabama law to an office in either branch where, in the conduct of such office, administrative and discretionary powers attend the appointment. Also, this definition shall mean an appointed member of any commission or committee which has administrative or policy-making control of any governmental function, but shall not mean members of commissions or committees functioning solely for advisory or research purposes."
This definition, which appears to be much broader than the present act, in encompassing even more persons, was nevertheless held not to include appellees by the decision of the Circuit Court of Montgomery County in 1974. When the Ethics Act was revised in 1975, the legislature did not specifically list appellees in the definition of the term "public official." This being so, we think it clear that the above-cited rule of statutory construction dictates the conclusion we reach.
The other reason for the result we reach is as follows. The avowed purpose of the Ethics Act is to eliminate conflicts of interest between the private interests of an elected official or a government employee and his (her) duties as such. Appellants do not suggest, in brief, a single instance in which appellees might become involved in a conflict of interest by reason of their service on these entities. However, the dissent suggests that conflicts could arise if a bar commissioner or attorney member of the Court of Judiciary solicited or received a gift or favor in return for his vote or if a lawyer member of the Judicial Compensation Commission used his official position to obtain personal financial gain for himself by arranging for his assignment as a guardian ad litem. In the unlikely event that such actions did occur, they would constitute violations of one or more provisions of the Code of Professional Responsibility governing attorneys and would subject them to disbarment.
In sum, the dissent would have it both ways! On the one hand, it says these appellees are "public officials," under the Ethics Act; therefore, they have to comply with the provisions requiring the filing of financial disclosure statements. On the other hand, it says these appellees do not have to comply with the other provisions of the Act "dealing with restrictions and prohibitions on the actions of public officials."
Public officials are public officials. Either these appellees are, or they are not, public officials. If they are, as the dissent suggests, they are subject to all provisions. If they are not, as we hold, they are subject to none of the Act's provisions. To hold otherwise would constitute judicial legislation.
Appellants argue that our holding will place appellees above the law and make them immune from compliance with ethical standards. This is patently untrue. Those members of these entities who are attorneys are subject to the Code of Professional Responsibility, with its attendant "Ethical Considerations" and "Disciplinary Rules." Those members who are judges are bound by the Canons of Judicial Ethics. And, of course, all members are bound to obey the law or suffer the consequences.
AFFIRMED.
FAULKNER, JONES, ALMON, SHORES, and EMBRY, JJ., concur.
BEATTY, J., concurs specially.
TORBERT, C. J., and MADDOX, J., dissent.
BEATTY, Justice (concurring specially).
I concur in the majority opinion but for a different reason. In my opinion, the "public officials" covered by the Ethics Law are only those who have "administrative and discretionary authority for the receipt or expenditure of public funds," and I believe it is implicit in the findings of the lower court that these officials have no such authority. See the definition of "public official" in the Amendatory Act, Act No. 130, and referred to in Comer v. City of Mobile, 337 So.2d 742 (Ala.1976).
*6 TORBERT, Chief Justice (dissenting):
Ethics or conflict of interest statutes are of recent vintage. One legislative enactment (1975 Ala. Acts Reg. Sess. No. 130) attempts to deal with (1) persons elected at the state, county, or municipal level of government, (2) persons appointed under state, county or municipal law to an office involving administrative and discretionary authority over public funds, and (3) members of state boards, commissions, committees, councils and authorities, however selected; therefore it necessarily follows that the scope and application of such statute be broad. The difficulty presented by specificity, usually sought in statutory law, is further compounded where, as here, it is necessary to delicately balance the equities between the public's right to know and to foster the public interest over private gain, and at the same time encourage, recruit and retain those best qualified to render public service. The worthy goal that there be confidence in the integrity of our government is further complicated by the fact that, in our scheme of government in this state, citizens are called upon to render public service on a part-time basis (and sometimes without any compensation). The government must not unduly restrict their opportunity to acquire and retain private economic interests which are available to all citizens.
The legislature, in the exercise of its lawful powers, passed Act No. 130 (codified at Ala. Code tit. 55, §§ 327(8)-327(37) (Interim Supp.1975)) in the 1975 regular session in recognition of the fact that:
"It is essential to the proper operation of democratic government that public officials be independent and impartial; that governmental decisions and policy be made in the proper channels of the governmental structure; that public office not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government."
Ala. Code tit. 55, § 327(8)(a) (Interim Supp. 1975) (emphasis added). This statement indicates that the legislature intended Act No. 130 to be broad in its coverage. However, the legislature also intended the enforcement of the provisions of Act No. 130 to be balanced with the prevention of undue restrictions on the outside employment of part-time public officials:
"It is the policy and purpose of this chapter to implement these objectives of protecting the integrity of all governmental units of this state and of facilitating the recruitment and retention of qualified personnel by prescribing essential restrictions against conflicts of interest in state government without creating unnecessary barriers to the public service."
Ala. Code tit. 55, § 327(8)(d) (Interim Supp. 1975). Thus, while I dissent from the majority's holding that the appellees are not "public officials," it does not necessarily follow that all of the provisions of Act No. 130 must be applied to the appellees.
The majority is in error in its assertion that the members of the Board of Bar Commissioners, the Court of the Judiciary, and the Judicial Compensation Commission are not "public officials" within the context of Act No. 130. Though the statute does not expressly mention these governmental bodies by name, the construction of "public official" must necessarily be broad. Ala. Code tit. 55, § 327(9)(k) (Interim Supp.1975). It is noted that the statutory definition includes "members of state boards, commissions, committees, councils and authorities, however selected." Id. The majority holds that, in any case, the members of the Judicial Compensation Commission are "advisory board members," and thus are expressly excluded from the definition of "public official." Id. This proposition, though possessing logical appeal at first glance, is also in error. The members of the Judicial Compensation Commission are empowered to make recommendations to the legislature in regard to judicial salaries. Ala. Const. art. 6, § 148(a). Though this appears to be an advisory function, it must be noted that the recommendations of the commission become law unless rejected or altered by the legislature. Id. § 148(d). This potential power of appropriation removes the commission from the category of "advisory board."
*7 In addition to the Act's definition of "public official," it is helpful to consider this court's interpretation as to public officials generally. Using the identical case authority cited by the majority, it seems abundantly clear that members of the Board of Bar Commissioners of the Alabama State Bar, the Judicial Compensation Compensation, and the Court of the Judiciary are, in fact, public officials under our previous decisions. A public official usually means "a person who, by lawful authority, has been invested with a part of the sovereign functions of government." Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 481, 76 So. 422, 423 (1917). He is "one who performs a public function, and his authority is derived directly from the state by legislative enactment," and through such law his duties, powers and authority are prescribed. Hard v. State ex rel. Owen, 228 Ala. 241, 242, 153 So. 725, 726 (1934); accord, State ex rel. Haas v. Stone, 240 Ala. 677, 680, 200 So. 756, 758 (1941).
As to the Board of Bar Commissioners, the administration of laws relating to the examination of applicants for the license to practice law and the administration of rules governing discipline of lawyers are all a part of the sovereign functions of government, and these duties and powers are prescribed by statute. Ala. Code tit. 46, § 25 (1958). To hold that members of the Board of Bar Commissioners are not "public officials" because they have duties which are dependent upon Supreme Court approval is without merit. The fact that a public official is supervised by or subject to regulation or approval of a higher official or body does not lessen the importance of the official public function of that person.
The Court of the Judiciary, as well as the Judicial Compensation Commission, were created under the new Judicial Article to the Alabama Constitution. The members of these governmental bodies exercise significant state powers which are specified in the constitution. The members of the Court of the Judiciary have the power to remove from office, suspend, or censure a state judge. Ala. Const. art. 6, § 157(a). The powers and duties of the members of the Judicial Compensation Commission are also significant as previously discussed.
The members of the Board of Bar Commissioners, the Court of the Judiciary, and the Judicial Compensation Commission occupy offices created by state law, and they exercise specified powers as defined by the Alabama Constitution or by statute. It matters not that they receive no salary by virtue of their office so long as they derive their powers, duties and authority from law and are invested with a part of the sovereign functions of government. They fit within the definition of "public official" in Title 55, section 327(9)(k) of the Alabama Code (Interim Supp.1975).
The majority argues that the legislature, when amending the Ethics Act in 1975, was aware that the Circuit Court of Montgomery County had held that the statutory definition in the 1973 Act did not cover the appellees. Since the legislature did not specifically list the appellees in the 1975 Act, the majority feels that Act No. 130 was not intended to be applied to the appellees under the authority of Coden Beach Marina, Inc. v. City of Bayou La Batre, 284 Ala. 718, 228 So.2d 468 (1969). The majority's reliance on Coden Beach is misplaced for two reasons. First, the court in Coden Beach was dealing with a previous Supreme Court construction of a particular legislative actnot a circuit court ruling on the viability or coverage of the act. Id. at 723, 228 So.2d at 471-72. Second, the circuit court decision cited by the majority merely granted a preliminary injunction to the appellees; there was no adjudication on the merits of their construction of the statute.
Act No. 130 has already been attacked as "vague and overbroad," but in our recent case of Comer v. City of Mobile, 337 So.2d 742 (Ala.1976), we held:
"After careful consideration of the foundation of the trial court's decree and our own consideration of the merits of this challenge, we find that the Act itself is not vague or overbroad."
Id. at 750. Nevertheless, the appellees argue that, since the objective behind Act No. *8 130 is to eliminate conflicts of interest, the application of the Act to them would be overbroad since no conflict of interest could arise by their service on these governmental bodies. The majority agrees with this assertion. However, it is obvious to me that conflicts could clearly arise. Surely a bar commissioner or a lawyer-member of the Court of the Judiciary should not solicit nor receive "anything of value, including a gift, favor or service or a promise of future employment, based on any understanding that [his] vote . . . [in a proceeding to discipline a lawyer or judge] would be influenced thereby." Ala. Code tit. 55, § 327(11) (Interim Supp.1975). Surely no lawyer-member of the Judicial Compensation Commission should use his "official position or office to obtain direct personal financial gain for himself" by arranging for his assignment as a guardian ad litem for injured minors seeking court approval of settlements. Id. § 327(10)(a). The fact that such conflicts might actually arise proves that the legislature did not enact an overbroad statute.
On the other hand, I do not believe that an actual or potential conflict of interest could arise to warrant proscribing the appellees from receiving "any money . . for advice or assistance on matters concerning the legislature." Id. § 327(12). I would hold such restrictions to be overbroad in regard to the appellees and in no way reasonably related to the evils sought to be eliminated. The appellees are part-time public officials who serve without compensation. They must rely on outside employment for their living. Thus, the public's interest in governmental integrity must be balanced with the appellees' interests in serving the public without having their outside employment overly restricted. LegislationConflicts of Interest: A New Approach, 18 U.Fla.L.Rev. 675, 684 (1966). Therefore, I would hold that those provisions in Act No. 130 dealing with restrictions and prohibitions on the actions of public officials should not be applied to the appellees unless it could be shown that such provisions rationally relate to the elimination of actual conflicts of interest. Manning, The Purity Potlatch: An Essay on Conflicts of Interest, American Government, and Moral Escalation, 24 Fed.B.J. 239, 255 (1964).
I base my construction of Act No. 130 in accordance with the following well-established rule:
"Where the terms of a statute do not indicate with reasonable certainty their intended application to particular cases, though their general intent and application are clear, they should be given such a construction as is conducive to fairness and justice, and in harmony with the general spirit and policy of the statute, rather than one which is offensive thereto, if that construction is reasonably consistent with the language used."
Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 45, 92 So. 193, 197 (1921) (emphasis added); accord, Cole v. Gullatt, 241 Ala. 669, 672, 4 So.2d 412, 415 (1941). "The fact that a statute might be susceptible of misapplication does not necessarily make it unconstitutional," Stein v. Howlett, 52 Ill.2d 570, 580, 289 N.E.2d 409, 414 (1972), therefore to avoid an unconstitutional application of Act No. 130, I would limit certain provisions of the Act with regard to the appellees. Such limitations "can best be [further refined] when actual cases requiring such interpretation are presented." Stein v. Howlett, 52 Ill.2d at 581, 289 N.E.2d at 415. The limitations arrived at above clearly follow from an examination of not only the general language of the Act, "but also from the reason and necessity for the act, the evil [conflicts of interest] sought to be remedied, and the object and purpose sought to be obtained." Rinehart v. Reliance Insurance Co., 273 Ala. 535, 538, 142 So.2d 254, 256 (1962); accord, Cole v. Gullatt, 241 Ala. 669, 672, 4 So.2d 412, 415 (1941).
The appellees, as public officials, come within the ambit of Act No. 130, and the financial disclosure provisions of the Act are rationally related to the legislative goal of eliminating conflicts of interest. It has been stated that:

*9 "The public's right to know and the government interest in both the prevention of official misconduct and the cultivation of public confidence in the integrity of government outweigh the public servant's interest in financial privacy so long as the disclosure statute is not overbroad in its reach."
Staines, A Model Act for Controlling Public Corruption Through Financial Disclosure and Standards of Conduct, 51 Notre Dame Law. 636, 663 (1976). The disclosure requirements in Act No. 130 are not overbroad, Ala. Code tit. 55, § 327(19) (Interim Supp.1975), and they rationally relate to the compelling legislative goal stated in section 327(8)(a). The appellees should be required to file in accordance with Act No. 130, and the restrictive provisions should be tempered or simply not applied to the appellees in accordance with the legislative purpose behind the Act. Ala. Code tit. 55, § 327(8)(d) (Interim Supp.1975).
Purity in government is a splendid ideal, but "one ideal pursued singlemindedly will eventually collide with another equally valid" one. Manning, supra at 256. Aided by established rules of statutory construction viewed in the light of modern circumstances, this court is called upon to resolve the delicate balance between public and private interests in the case at hand.
MADDOX, Justice (dissenting).
I can neither agree with the majority opinion nor with the Chief Justice's dissent, except I do agree with one short paragraph in the majority opinion which is directed at the Chief Justice's dissent, and which reads:
"Public officials are public officials. Either these appellees are, or they are not, public officials. If they are, as the dissent suggests, they are subject to all provisions. If they are not, as we hold, they are subject to none of the Act's provisions. To hold otherwise would constitute judicial legislation."
The legislature very carefully defined "public official." It used specific words such as "this definition shall also include" and "this definition excludes" and the original Act which is filed with the Department of Archives and History shows that the "public official" definition was amended by both houses of the legislature. I believe that the legislature was well aware of which "public officials" it intended to include and exclude. Whether these particular "public officials" should or should not have been included was a question addressed to legislative choice and the intent of the legislature is plain to me. I believe that this Court has changed the legislative intent by use of the rule of statutory construction, and as a consequence, the Court has necessarily substituted its choice for that of the legislature.

ON REHEARING
BLOODWORTH, Justice.
OPINION CORRECTED. APPLICATION FOR REHEARING OVERRULED.
FAULKNER, JONES, ALMON, SHORES, EMBRY, and BEATTY, JJ., concur.
TORBERT, C. J., and MADDOX, J., dissent.
NOTES
[1] Our decision in Comer v. City of Mobile, ante, declared unconstitutional and struck the italicized portions of this sentence.